In the

# United States Court of Appeals

### For the Seventh Circuit

No. 11-2402

ANTHONY MANISCALCO,

*Plaintiff-Appellant,*

*v.*

JAY SIMON and JEFFREY HAUPTMAN,
Gurnee Police Officers, and MCDONALD'S
RESTAURANTS OF ILLINOIS, INC.,

*Defendants-Appellees.*

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 09 cv 0901—**Robert W. Gettleman**, *Judge.*

ARGUED JANUARY 10, 2012—DECIDED APRIL 5, 2013

Before BAUER, ROVNER, and SYKES, *Circuit Judges.*

SYKES, *Circuit Judge.*    One evening in March 2007 Anthony Maniscalco hosted a birthday party for a local politician at his restaurant in Gurnee, Illinois. When the festivities ended, Maniscalco capped the night with two celebratory shots of Patrón tequila and a trip to a nearby McDonald's, where he encountered Fidel Castro

working at the drive-through window. Minutes before Maniscalco arrived, a Gurnee police officer had stopped at the drive-through, but not to buy food. Instead, the officer handed Castro a note containing four numbers—2626—and told him to give it to his co-worker Fernando Guzman. Castro did as he was told. The numbers on the note partly corresponded to Maniscalco's license-plate number: C112626.

Maniscalco drove up a moment later and got into a heated argument with Guzman while paying for his order, grabbing Guzman by the wrist and nearly pulling him through the pay window (or so Guzman told the police). Maniscalco released Guzman's arm and drove to the pick-up window. As Castro was giving him his food, Guzman yelled at him to stop. Castro stopped, and Maniscalco angrily drove off, getting his late-night snack at another fast-food restaurant instead.

In the meantime the McDonald's manager called 911, and a dispatch went out over the police radio about the alleged assault. It was not long before Maniscalco was stopped and arrested for disorderly conduct and drunk driving. The charges didn't stick. A jury found him not guilty of drunk driving and battery (upgraded from the original disorderly conduct charge). Maniscalco then sued the arresting officers and McDonald's under 42 U.S.C. § 1983 for conspiracy to violate his Fourth Amendment rights. He believes that Gurnee police and McDonald's employees were in cahoots to induce him to breach the peace so the officers would have a pretext to arrest him.

On the defendants' motion for summary judgment, the district court sifted through the evidence and found it wanting. We agree. Notwithstanding Castro's deposition testimony about the odd and unexplained note, the evidence supports probable cause to arrest, and McDonald's cannot be liable in any event because there is no vicarious liability under § 1983.

## I. Background

At the time of these events, Anthony Maniscalco was a restaurant entrepreneur and well-known resident of the Village of Gurnee, a suburban community located at the northern reach of the Chicago metropolitan area. Maniscalco, known as "Tony," describes himself as a "very, very public" person in the community, "the man, if you will, in Gurnee," and "a voice in that town." His restaurant, Paisans, was "the nicest restaurant [in the area], not just in Gurnee." He took an active role in local charity drives and was close to several public officials, including the chief of police. In 2005 he ran for a seat on the village's board of trustees; he lost, but only narrowly. Because he "made a stand" in the election, and perhaps more generally because of his notoriety in the community, Maniscalco had some detractors as well, or so he believes.

On the evening of March 25, 2007, Maniscalco threw a birthday party at Paisans in honor of State Senator Terry Link. The event appears to have doubled as a political fund-raiser, though the record is not entirely clear on that point. Either way, the party was apparently

a success; it was well-attended and ran until about midnight. As things were winding down, Maniscalco knocked back a shot of Patrón tequila. He closed Paisans at about 1 a.m., then stopped briefly at a restaurant across the street and had another shot of tequila with a friend. On the way home, he stopped at a nearby 24-hour McDonald's to grab a bite to eat.

Just before Maniscalco arrived, an unidentified Gurnee police officer pulled up to the drive-through and handed a piece of paper to Fidel Castro, a McDonald's employee who was working at the drive-through pick-up window. The officer told Castro to give the note to Fernando Guzman, another McDonald's employee. Castro glanced at the note but did not examine it closely; he later testified in his deposition that it contained the handwritten numbers 2626.

A minute or two after the officer left, Maniscalco pulled up to the McDonald's drive-through and ordered a "number four" with cheese and onions and a Coke. Guzman took his order, but apparently they had trouble understanding each other. When Maniscalco drove around to the pay window, where Guzman was located, an argument erupted. What happened next is disputed. Maniscalco claims that Guzman swore at him in Spanish and refused to give him proper change. Guzman, on the other hand, says that Maniscalco was verbally abusive and grabbed him by the wrist, almost pulling him through the pay window. Without receiving his change, Maniscalco drove ahead to the pick-up window where Castro was packaging his order. Castro started

to hand Maniscalco his food, but Guzman suddenly yelled for him to stop. Castro stopped and pulled the bag back through the pick-up window. Maniscalco cursed and drove off. Guzman jotted down Maniscalco's license-plate number as he drove away.

Johanna Escobar, the manager of the McDonald's, called the police to report that one of her employees had been grabbed and verbally berated by a customer at the pay window. Guzman provided a description of Maniscalco—a male of Italian descent in his 40s wearing a dark suit—and also described the car, including its license-plate number: C112626.

Still hungry, Maniscalco drove to the local Steak 'n Shake, another fast-food restaurant not far away. Meanwhile, Gurnee Police Officer Jeffrey Hauptman was dispatched to the McDonald's to investigate the incident, and the dispatcher alerted patrol officers in the area to be on the lookout for Maniscalco's car. Officer Steven Olds soon spotted Maniscalco driving nearby. Because the dispatcher had reported a possible battery, Officer Olds called for backup and waited until Officers Jay Simon and Dan Pacheco arrived before initiating a traffic stop. When Maniscalco pulled over, Officers Olds and Simon approached the car and noted that Maniscalco exhibited signs of intoxication. Olds recognized Maniscalco as a well-known businessman in the community.

Officer Hauptman, meanwhile, was at the McDonald's taking statements from Guzman and Escobar. He and Officer Olds spoke over the police radio and by cell phone

about what to do next. Olds, who had just talked to Maniscalco, asked Hauptman: "You know who it is, don't you?" Hauptman responded that it was "Tony," meaning Maniscalco; he later testified that this was a guess based on the description of the suspect in the McDonald's assault. Olds then asked, "How come everybody knows but me?" Apparently other patrol officers had also guessed that the man they were looking for was Maniscalco based on the description from the dispatcher. Hauptman instructed Olds to arrest Maniscalco for battery and disorderly conduct based on the statements from Guzman and Escobar.

The officers at the scene of the stop did not conduct field sobriety tests during their roadside encounter with Maniscalco. Instead, following Hauptman's instructions, Olds handcuffed Maniscalco and took him into custody. After they arrived at the police station, Officer Simon administered sobriety tests. Maniscalco did not do well, and when asked to take a Breathalyzer test, he refused. Maniscalco was charged with disorderly conduct and driving under the influence of alcohol. The disorderly conduct charge was dismissed a few months later when the McDonald's employees failed to appear in court. The charge was later reissued as a battery, and in December 2008 a jury acquitted Maniscalco on both the battery and drunk-driving charges.

After the criminal proceedings had come and gone, Maniscalco brought this § 1983 suit against Officers Hauptman and Simon, "one unknown Gurnee police officer," and McDonald's Restaurants of Illinois, Inc.

He alleged that the officers conspired with McDonald's employees to fabricate probable cause for his arrest in violation of his right under the Fourth and Fourteenth Amendments to be free from unreasonable seizure.

Following discovery, the defendants moved for summary judgment, and the district court granted the motion, holding that the uncontroverted evidence established that Officers Hauptman and Simon had probable cause to arrest Maniscalco for disorderly conduct and driving under the influence of alcohol. The court acknowledged Castro's testimony about the unexplained note from an unidentified Gurnee officer bearing numbers corresponding to the license plate of the car Maniscalco was driving. In the court's view, however, that strange encounter did not undermine the existence of probable cause because there was "[n]o evidence, direct or circumstantial, connect[ing] Hauptman and Simon to that event." Absent more, the court held, the conspiracy theory was "pure speculation." Without a Fourth Amendment violation, the § 1983 claim necessarily failed. As an additional ground for summary judgment, the court held that the suit against McDonald's was improper because respondeat superior liability is unavailable under § 1983.

## II. Discussion

We review the district court's grant of summary judgment de novo, construing all facts and drawing reasonable inferences in the light most favorable to Maniscalco as the nonmoving party. *Spivey v. Adaptive*

*Mktg. LLC*, 622 F.3d 816, 822 (7th Cir. 2010). To defeat summary judgment, Maniscalco needed evidence establishing a genuine factual dispute for trial. Factual disputes are genuine "only if there is sufficient evidence for a reasonable jury to return a verdict in favor of the non-moving party on the evidence presented," and they are material only if their resolution might change the suit's outcome under the governing law. *Stokes v. Bd. of Educ. of the City of Chi.*, 599 F.3d 617, 619 (7th Cir. 2010). Summary judgment is appropriate if no genuine factual dispute exists and the moving party is entitled to judgment as a matter of law. *See* FED. R. CIV. P. 56.

Maniscalco's main argument on appeal is that his evidence is sufficient to create a jury issue on his claim that the Gurnee officers and McDonald's employees conspired to fabricate probable cause by inducing him to breach the peace. Secondarily, he asks that we overrule our cases holding that respondeat superior liability is unavailable in a § 1983 suit against a private employer. *See, e.g., Gayton v. McCoy*, 593 F.3d 610, 622 (7th Cir. 2010); *Iskander v. Village of Forest Park*, 690 F.2d 126, 128 (7th Cir. 1982). We agree with the district court that the evidence easily establishes probable cause to arrest and that Maniscalco's conspiracy theory rests on speculation. And we see no reason to revisit our caselaw foreclosing respondeat superior liability in this context.

"Probable cause is an absolute bar to a claim of false arrest asserted under the Fourth Amendment and section 1983." *Stokes*, 599 F.3d at 622. "Whether probable

cause exists depends upon the reasonable conclusion to be drawn from the facts known to the arresting officer at the time of the arrest." *Devenpeck v. Alford*, 543 U.S. 146, 152 (2004). Thus, "an arresting officer's state of mind (except for the facts that he knows) is irrelevant to the existence of probable cause." *Id.* at 153. Judicial evaluation of probable cause "keep[s] in mind that probable cause is a common-sense inquiry requiring only a probability of criminal activity; it exists whenever an officer or a court has enough information to warrant a prudent person to believe criminal conduct has occurred." *Whitlock v. Brown*, 596 F.3d 406, 411 (7th Cir. 2010). We need only evaluate the information brought to the arresting officer's attention and assess whether the officer reasonably trusted that information at the time. Whether the information actually proved to be true is irrelevant.

The district court held that the facts known to the officers established probable cause to arrest Maniscalco for both disorderly conduct and driving under the influence of alcohol. As to the second of these offenses, we disagree. Although an arrest is permissible under the Fourth Amendment if the arresting officer had probable cause to make the arrest for any reason, *see Devenpeck*, 543 U.S. at 153-54, the probable-cause inquiry depends on "the facts known to the arresting officer *at the time of the arrest*," *id.* at 152 (emphasis added). "The fact that an officer later discovers additional evidence unknown to her at the time of the arrest . . . is irrelevant—we only care about what the officer knew at the time the decision was made." *Reynolds v. Jamison*, 488 F.3d 756, 765

(7th Cir. 2007). The officers did not obtain probable cause for a drunk-driving arrest until *after* Maniscalco was arrested and taken to the police station. They had not stopped Maniscalco for erratic driving or any of the common traffic violations that suggest impaired driving. Indeed, this wasn't a traffic stop in the ordinary sense; Maniscalco was pulled over because his car and license plate matched the description of the car driven by a man who had just assaulted an employee at the McDonald's drive-through.

Moreover, although Officer Simon noted during the stop that Maniscalco showed signs of intoxication, it was not until later, at the police station, that he administered field sobriety tests. Together with the other evidence, the sobriety tests supplied probable cause to charge Maniscalco with driving under the influence. But what counts for our purposes are the facts known to the arresting officers when they made the arrest. As of that time, the Gurnee officers did not have probable cause to arrest Maniscalco for drunk driving.

However, ample evidence of disorderly conduct was readily available at the time of Maniscalco's arrest. A person commits disorderly conduct as defined by Illinois law if he "act[s] in such unreasonable manner as to alarm or disturb another and to provoke a breach of the peace." 720 ILL. COMP. STAT. 5/26-1. The Illinois Supreme Court has explained that the disorderly conduct statute "is intended to guard against an invasion of the right of others not to be molested or harassed, either mentally or physically, without justification." *People v.*

*Davis*, 413 N.E.2d 413, 415 (Ill. 1980) (internal quotation marks omitted). The breach-of-the-peace element requires nothing more than the unreasonable harassment of a single person, even in a nonpublic location. *Id.* at 415-16. Whether these elements are satisfied depends heavily on "the conduct's unreasonableness in relation to the surrounding circumstances." *Biddle v. Martin*, 992 F.2d 673, 677 (7th Cir. 1993).

The undisputed facts establish that the officers had probable cause to arrest Maniscalco for committing disorderly conduct at the McDonald's drive-through. Guzman reported that Maniscalco was verbally abusive and grabbed his wrist as if to pull him through the drive-through window at the McDonald's. Officer Hauptman was dispatched to the scene and took a statement from Guzman confirming the information reported in the 911 call. Escobar, the McDonald's manager, corroborated Guzman's report; she said that Maniscalco was cursing and looked like he wanted to hurt someone. Moreover, Maniscalco was driving the car that was used in the assault and matched the physical description of the suspect. Nothing more is needed for probable cause. Victim statements like these are ordinarily sufficient to establish probable cause to support an arrest for disorderly conduct. *Reynolds*, 488 F.3d at 765.

Maniscalco concedes as much. He argues instead that Officer Hauptman was privy to the alleged conspiracy and thus knew that the victim statements were contrived. He has no evidence from which a reasonable jury

could infer this knowledge. We assume, as we must, that Fidel Castro is telling the truth.[1] Still, we have our doubts that his testimony about the inscrutable note from an unidentified police officer is enough to support a reasonable inference of a conspiracy against Maniscalco among the Gurnee police and McDonald's employees. It was a strange occurrence, no doubt, but even if true, it's too tenuous by itself to support an inference of a conspiracy to violate Maniscalco's constitutional rights.

The claim fails for a more fundamental reason, however—the one identified by the district court. There is insufficient evidence connecting Officers Hauptman and Simon to the alleged conspiracy. Maniscalco hangs his hat on Officer Hauptman's ability to guess his identity based on the dispatcher's description of the suspect in the McDonald's assault: a male of Italian descent in his 40s wearing a dark suit. But Maniscalco describes himself as a particularly prominent resident of Gurnee, outspoken and well-known around town. He owned the nicest restaurant in the area, had run for public office, and was close to several village officials, including the police chief. Hauptman, Simon, and the other officers involved in Maniscalco's arrest testified in deposition that they were familiar with him prior

---

[1] Castro testified in his videotaped deposition that he had been ordered removed and would soon be voluntarily leaving the country. No other witness corroborated his account of the note.

to this incident. Under these circumstances Officer Hauptman's ability to guess Maniscalco's identity is unremarkable and cannot support a reasonable inference that he was part of a conspiracy against Maniscalco. And there is nothing at all connecting Officer Simon to the alleged conspiracy.

Because the officers had probable cause to arrest Maniscalco for disorderly conduct, there was no violation of the Fourth Amendment. As an independent ground to uphold the summary judgment for McDonald's, vicarious liability under the doctrine of respondeat superior is unavailable against private employers sued under § 1983 based on the rationale of *Monell*. *Iskander*, 690 F.2d at 128 ("[J]ust as a municipal corporation is not vicariously liable upon a theory of respondeat superior for the constitutional torts of its employees, *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978), a private corporation is not vicariously liable under § 1983 for its employees' deprivations of others' civil rights.").

Maniscalco asks us to revisit *Iskander*, but we decline the invitation. First, aside from the unsupported allegation of a conspiracy, there is no conceivable basis on which to conclude that McDonald's employees were acting under color of state law, as required for liability under § 1983; they were not acting in place of the state performing a delegated public function. *See London v. RBS Citizens, N.A.*, 600 F.3d 742, 746 (7th Cir. 2010); *Johnson v. LaRabida Children's Hosp.*, 372 F.3d 894, 896 (7th Cir. 2004). And although a private person may be liable under § 1983 for conspiring with a state actor to

violate the constitutional rights of another, *see Dennis v. Sparks*, 449 U.S. 24, 27-28 (1980); *Reynolds*, 488 F.3d at 764, here, as we have explained, the conspiracy theory is entirely speculative.

In any event, Maniscalco has not given us a good reason to think that our long-standing position is mistaken. He suggests that the Supreme Court has implicitly rejected *Iskander* in more recent cases holding that private parties do not necessarily enjoy the same defenses and immunities as governmental defendants under § 1983. *See Wyatt v. Cole*, 504 U.S. 158 (1992); *Tower v. Glover*, 467 U.S. 914 (1984); *Dennis,* 449 U.S. at 28-29. This argument confuses an affirmative basis for liability with an immunity or defense. The doctrine of respondeat superior is a doctrine of vicarious liability, not a defense or immunity. Nothing the Supreme Court said in *Wyatt, Tower*, or *Dennis* calls into question our holding in *Iskander* that vicarious liability is unavailable in a § 1983 suit against a private employer. Indeed, it would be inconsistent with the Supreme Court's decision in *Monell* to hold otherwise. 436 U.S. at 694. Summary judgment was properly entered for McDonald's on this additional ground.

AFFIRMED.