In the

# United States Court of Appeals

## For the Seventh Circuit

No. 12-2962

UNITED STATES OF AMERICA,

*Plaintiff-Appellee*,

*v.*

JOHN EDWARD SCOTT,

*Defendant-Appellant*.

Appeal from the United States District Court for the
Northern District of Indiana, Fort Wayne Division.
No. 09 CR 98 — **Theresa L. Springmann**, *Judge*.

ARGUED JANUARY 17, 2013 — DECIDED SEPTEMBER 10, 2013

Before MANION and TINDER, *Circuit Judges*, and LEE,
*District Judge*.[*]

LEE, *District Judge*. While executing a search warrant,
police found illegal drugs and a firearm in John Edward

---

[*] The Honorable John Z. Lee, District Judge for the United States District
Court for the Northern District of Illinois, sitting by designation.

Scott's home. Scott was subsequently indicted for two drug offenses and two firearms offenses. The affidavit submitted by the police to obtain the warrant described two controlled drug buys in which detectives used a confidential informant ("CI") to purchase heroin from a Gerald Reynolds. On each occasion, after meeting with the CI, Reynolds drove alone to Scott's house and returned to the CI with the requested heroin. The affidavit contained one sentence describing an audio recording of a conversation between Reynolds and Scott that occurred in Scott's driveway during the first controlled buy.

Scott filed a motion to suppress the evidence seized in the search of his house, arguing that the recorded driveway conversation was obtained in violation of the Fourth Amendment and that the seized evidence constituted fruit from that poisonous tree. The district court denied the motion, and Scott pled guilty to possessing a controlled substance with the intent to distribute in violation of 21 U.S.C. § 841(a)(1). He was sentenced to 120 months of imprisonment followed by eight years of supervised release. As permitted by his plea agreement, Scott now appeals the denial of his suppression motion, arguing that he had a reasonable expectation of privacy in the driveway conversation and that, without the recorded conversation, the government lacked probable cause to obtain a search warrant for his house.

For the reasons given below, we conclude that there was sufficient evidence apart from the driveway conversation to establish probable cause for the search warrant. Thus, we need not reach the issue of whether Scott had a reasonable expectation of privacy in his driveway conversation with

Reynolds and affirm the district court's denial of Scott's
motion to suppress.

## BACKGROUND

On August 19, 2009, Allen County, Indiana police
detectives arranged for a CI to buy heroin from Reynolds in
Fort Wayne, Indiana. Before the CI contacted Reynolds,
detectives searched the CI's person and vehicle to make sure
there was no contraband. Detectives outfitted the CI with an
audio recording device and hid a second recording device
inside the CI's vehicle.

Under the detectives' constant surveillance, the CI drove
to a motel in Fort Wayne and entered a room to effectuate a
heroin transaction with Reynolds. From here, what started
out as a rather unremarkable law enforcement operation
took an unusual turn.

Rather than completing the transaction in the motel
room, Reynolds called his supplier to arrange a meeting.
Reynolds then left the motel with the CI in the CI's car and
drove to a gas station. At the gas station, the CI exited the
car, and Reynolds drove the CI's car alone to Scott's one-
story, single-family house. Scott's house had an attached
two-car garage, and the driveway connecting the garage to
the street was approximately three car lengths long.

After Reynolds parked in Scott's driveway, about half
way between the street and the garage, Scott exited the
house and approached the driver's side of the car. Scott then
spoke to Reynolds for about five minutes. During the
conversation, Scott stood outside the car, and Reynolds sat
in the driver's seat of the car. Unbeknownst to either man,

the audio device in the CI's car was recording their conversation, and an officer was watching them from a nearby surveillance vehicle.

In their conversation, Scott and Reynolds discussed the price of heroin. Scott told Reynolds that he was trying to get some "yay," which detectives believed meant cocaine, and that his supplier was charging him $150 for a "ball," which detectives believed was an eighth of an ounce of cocaine. Reynolds said that he had a guy who was looking for a "quarter," which detectives believed meant a quarter of an ounce of cocaine. Scott then returned to the house.

Still under surveillance, Reynolds backed out of the driveway and returned to the gas station. He picked up the CI, and the pair went to the motel, where Reynolds handed 1.7 grams of heroin to the CI.

Five days later, the CI performed a second controlled buy. As in the first instance, the detectives searched the CI and the CI's car to ensure it did not contain contraband. Under constant surveillance, the CI again met with Reynolds at the motel and went to the same gas station. Reynolds then drove alone in the CI's car to Scott's house. This time, Reynolds parked in the driveway, entered the house for about five minutes, and then exited the house and drove back to the gas station. There was no audio recording of any conversation. After Reynolds rendezvoused with the CI at the gas station, the CI gave detectives 1.74 grams of heroin.

Two days later, one of the detectives submitted a two-page affidavit to an Allen County Superior Court judge seeking a warrant to search Scott's house. The affidavit stated that the CI had previously proven to be credible and

reliable and had provided prior information that had been corroborated by the detectives. It also recounted the details of the two controlled buys and the steps taken to monitor the CI and Reynolds. The affidavit's only reference to the audio recording of the driveway conversation between Scott and Reynolds during the first controlled buy was in one sentence: "The conversation between the suspect and the individual that exited the residence was recorded by a covert recording device and captured conversation concerning the exchange of buy money for heroin."

A search warrant was issued, and officers searched Scott's house. During the search, officers found a loaded handgun, 928 grams of cocaine, 434 grams of marijuana, and 3 grams of heroin in Scott's bedroom.

Scott was indicted on two drug charges and two firearms charges. He moved to suppress the evidence seized in the search on the grounds that the driveway conversation was illegally recorded and that the evidence was fruit from that poisonous tree. The district court denied his motion. Scott then pled guilty to possession with the intent to distribute a controlled substance, and the other three charges against him were dismissed. As part of the plea agreement, Scott reserved the right to appeal the denial of his motion to suppress. He now brings that appeal.

## DISCUSSION

When reviewing a district court's denial of a motion to suppress, we review the court's legal conclusions *de novo* and defer to the district court's factual findings unless those findings are clearly erroneous. *See U.S. v. Schmidt*, 700 F.3d 934, 937 (7th Cir. 2012).

On appeal, Scott raises two issues. First, he argues that the district court erred in denying his request to suppress his driveway conversation with Reynolds because he had a reasonable expectation of privacy in the conversation under the Fourth Amendment and the federal wiretapping statute, 18 U.S.C. § 2510 *et seq.*[1]

Second, Scott argues that the district court erred in denying his motion to suppress the evidence seized during the search of his house. Scott contends that, without the contents of the driveway conversation, the police would not have had probable cause to obtain a search warrant and thus the evidence recovered during the search of his house was fruit of a poisonous tree.

The party seeking suppression bears the burden of establishing that he had a reasonable expectation of privacy in what was searched. *See United States v. Pitts*, 322 F.3d 449, 456 (7th Cir. 2003); *United States v. Meyer*, 157 F.3d 1067, 1079 (7th Cir. 1998). With this in mind, we turn to each of Scott's arguments.

As to Scott's first argument, the Fourth Amendment guarantees "[t]he right of the people to be secure in their persons … against unreasonable searches and seizures." U.S. Const. Amend. IV. "[A] Fourth Amendment search occurs

---

[1] Under the federal wiretapping statute, commonly known as "Title III" of the Omnibus Crime Control and Safe Streets Act of 1968, *see* Omnibus Crime Control and Safe Streets Act of 1968, 18 U.S.C. §§ 2510 *et seq.*, oral communications may not be recorded or intercepted with an electronic or mechanical device absent strict compliance with other provisions of Title III, which the government concedes were not satisfied here. *See* 18 U.S.C. § 2511(1)(b).

when the government violates a subjective expectation of privacy that society recognizes as reasonable." *Kyllo v. United* States, 533 U.S. 27, 33 (2001) (citing *Katz v. United States*, 389 U.S. 347, 361 (1967) (Harlan, J., concurring)); *see United States v. Mendoza*, 438 F.3d 792, 795 (7th Cir. 2006) ("A reasonable expectation of privacy is infringed when (1) the defendant exhibits an actual or subjective expectation of privacy and (2) the expectation is one that society is prepared to recognize as reasonable.") (citing *Katz*, 389 U.S. at 361).

The government agrees that Scott had a subjective expectation of privacy in his driveway conversation with Reynolds. Thus, the issue raised by Scott is whether his expectation of privacy was reasonable.

The reasonableness of an expectation of privacy depends upon "whether the government's intrusion infringes upon the personal and societal values protected by the Fourth Amendment." *California v. Ciraolo*, 476 U.S. 207, 212 (1986) (citing *Oliver v. United States*, 466 U.S. 170, 181-83 (1984)). A court's inquiry into whether a defendant's expectation of privacy in the subject of the search was reasonable for Fourth Amendment purposes is "necessarily fact dependent, and whether a legitimate expectation of privacy exists in a particular place or thing must be determined on a case-by-case basis." *United States v. Villegas*, 495 F.3d 761, 767 (7th Cir. 2007) (citation and quotation omitted).

Furthermore, as the Supreme Court has noted, "the Fourth Amendment protects people, not places. What a person knowingly exposes to the public, even in his own home or office, is not a subject of Fourth Amendment protection … [b]ut what he seeks to preserve as private, even

in an area accessible to the public, may be constitutionally protected." *Katz*, 389 U.S. at 351 (internal citations omitted). In *Katz*, an individual had an objectively reasonable expectation of privacy in a conversation he had in a public telephone booth because, even though the booth was glass, he "occupie[d] it, shut[] the door behind him, and pa[id] the toll." *Id.* at 352. Because he sought to exclude the "uninvited ear," he was "surely entitled to assume that the words he utters into the mouthpiece will not be broadcast to the world." *Id.*; *see also United States v. Hagarty*, 388 F.2d 713, 714-16 (7th Cir. 1968) (individual had a reasonable expectation of privacy in an after-hours conversation in an office because "[t]he key is whether defendant sought to exclude 'the uninvited ear'") (citing *Katz*, 389 U.S. at 351-52).

Conversely, an individual who makes a phone call on a public phone not enclosed in a booth and in a voice audible to a person standing nearby "knowingly expose[s] [the conversation] to the public" and is not entitled to Fourth Amendment protection. *United States v. McLeod*, 493 F.2d 1186, 1188 (7th Cir. 1974) (quotation omitted); *see In re John Doe Trader Number One*, 894 F.2d 240, 241 (7th Cir. 1990) (no reasonable expectation of privacy in recorded "statements of traders in the crowded, boisterous pits of the Chicago Mercantile Exchange" because by making the statements on the trading floor where an FBI agent overheard and recorded them, the defendant exposed the statements to the public).

Here, Scott contends that his expectation of privacy in his driveway conversation with Reynolds was reasonable in view of the circumstances. The government argues the contrary. We, however, need not decide this issue for the

purposes of this appeal because, even assuming, *arguendo*, that the recording of the conversation had been procured illegally, the search warrant was sufficiently supported by facts separate and apart from the recording, which then brings us to Scott's second argument.

Scott correctly contends that evidence discovered pursuant to a warrant will be inadmissible if the warrant was secured from a judicial officer through the use of illegally acquired information. *United States v. Oakley*, 944 F.2d 384, 386 (citing *Silverthorne Lumber Co. v. United States*, 251 U.S. 385, 391-92 (1920)). But "[a] search warrant obtained, in part, with evidence which is tainted can still support a search if the 'untainted information, considered by itself, establishes probable cause for the warrant to issue.'" *United States v. Gray*, 410 F.3d 338, 344 (7th Cir. 2005) (quoting *Oakley*, 944 F.2d at 386); *see United States v. Karo*, 468 U.S. 705, 719 (1984). In assessing whether the results of the subsequent search must be suppressed, we consider two questions: (1) whether the illegally obtained evidence affected the judge's decision to issue the warrant; and (2) whether the decision to seek the warrant was prompted by information unlawfully obtained. *Id.*; *United States v. Markling*, 7 F.3d 1309, 1315-16 (7th Cir. 1993).

Here, even assuming Scott's driveway conversation was illegally obtained, the affidavit police submitted to obtain the search warrant contained sufficient facts to establish probable cause apart from the one-sentence reference to the driveway conversation.

Regarding the first inquiry, Scott argues that without reference to the recorded conversation, the affidavit submitted to the Allen County Superior Court judge would

no longer support probable cause because it would contain only circumstantial evidence – that Reynolds made a phone call from a motel, dropped off the CI at a gas station, went to Scott's house, and then returned to the gas station and gave the CI heroin. Scott contends that this evidence is insufficient to support probable cause to search his house because it is unknown what occurred at Scott's house, and Reynolds could have had heroin on his person prior to calling or coming into contact with Scott. To this, Scott adds that the detectives did not observe any hand-to-hand exchange between Scott and Reynolds in Scott's driveway.

But the "central teaching of [Supreme Court] decisions bearing on the probable cause standard is that it is a 'practical, nontechnical conception.'" *Illinois v. Gates*, 462 U.S. 213, 231 (1983) (quoting *Brinegar v. United States*, 338 U.S. 160, 176 (1949)). "[P]robable cause is a fluid concept – turning on the assessment of probabilities in particular factual contexts – not readily, or even usefully, reduced to a neat set of legal rules." *Id.* at 232. "Probable cause is established when, based on the totality of the circumstances, the affidavit [to the judge] sets forth sufficient evidence to induce a reasonably prudent person to believe that a search will uncover evidence of a crime." *United States v. Peck*, 317 F.3d 754, 756 (7th Cir. 2003).

Furthermore, "[i]n issuing a search warrant, a [judge] is given license to draw reasonable inferences concerning where the evidence referred to in the affidavit is likely to be kept, taking into account the nature of the evidence and the offense," including, in a drug-related case, the inference that evidence of drug dealing is likely to be found where the dealer lives. *United States v. Singleton*, 125 F.3d 1097, 1102

(7th Cir. 1997). "Moreover, when observing activity of a person suspected of criminal activity, Government agents are entitled to reasonably rely upon their special knowledge and expertise to assess probabilities and draw inferences," *United States v. Marin*, 761 F.2d 426, 432 (7th Cir. 1985), and a judge may take into account the experience and special knowledge of the officers if the search warrant explains the significance of specific types of information. *United States v. Lamon*, 930 F.2d 1183, 1189 (7th Cir. 1991). What is more, "[g]enerally, a controlled buy, when executed properly, is a reliable indicator as to the presence of illegal drug activity." *United States v. Sidwell*, 440 F.3d 865, 869 (7th Cir. 2006). Finally, it bears noting that a "determination of probable cause should be paid great deference by reviewing courts." *Gates*, 462 U.S. at 236. "[T]he duty of a reviewing court is simply to ensure that the [judge] had a 'substantial basis for concluding' that probable cause existed." *Id.* at 238-39.

Here, the recorded conversation was only one among many facts in the search warrant affidavit submitted to the judge. The affidavit contained only one sentence about the recorded conversation: "The conversation between the suspect and the individual that exited the residence was recorded by a covert recording device and captured conversation concerning the exchange of buy money for heroin." Apart from this sentence, the affidavit contained an array of other facts, including a description of Scott's house and the protocol used in the two controlled buys. To wit, the affidavit described that, during each controlled buy, the CI was searched to ensure the absence of contraband and was under constant surveillance until the heroin was turned over to detectives; on each occasion, the CI met with Reynolds, who dropped off the CI at the gas station and, while still

under surveillance, drove the CI's vehicle to Scott's house; on the first occasion, Scott exited the house and talked with Reynolds; on the second, Reynolds entered Scott's house; on each occasion, Reynolds then returned to the gas station and met the CI, who then turned over heroin to detectives. These facts are sufficient to establish probable cause to search Scott's home for evidence of drugs. Indeed, a probable cause determination requires only a probability of criminal activity, not an actual showing of it. *Gates*, 462 U.S. at 225. Thus, the judge had probable cause to issue a search warrant even absent the description of the recorded driveway conversation.

As to the second inquiry, whether the decision to seek the warrant was prompted by information unlawfully obtained, Scott argues that the recorded driveway conversation is the primary reason detectives sought the warrant. As stated, however, the detective's affidavit contained many facts other than the recording of Scott's driveway conversation, and these other facts were sufficient to create probable cause to support a search warrant of Scott's house.

## CONCLUSION

For these reasons, the district court's denial of Scott's motion to suppress evidence seized from the search of his house is AFFIRMED.