NONPRECEDENTIAL DISPOSITION

To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued November 19, 2014
Decided January 5, 2015

**Before**

DIANE P. WOOD, *Chief Judge*

MICHAEL S. KANNE, *Circuit Judge*

JOHN DANIEL TINDER, *Circuit Judge*

No. 13-2966

| | |
|---|---|
| MEANITH HUON, | Appeal from the United States District |
| *Plaintiff-Appellant,* | Court for Southern District of Illinois. |
| | |
| *v.* | No. 12-cv-00166-MJR-PMF |
| | |
| WILLIAM MUDGE, et al., | Michael J. Reagan, |
| *Defendants-Appellees.* | *Chief Judge.* |

**O R D E R**

Meanith Huon, an attorney representing himself, sued the law-enforcement officers and prosecutors involved in charging him with sexual assault in 2008 and cyberstalking and witness harassment in 2009. He appeals from the grant of summary judgment for all defendants, arguing, principally, that the district court erroneously concluded from the undisputed evidence that probable cause existed to believe he committed each offense. We agree with the district court's comprehensive decision and affirm the judgment.

## I. Background

Before recounting the events underlying Huon's lawsuit, we must emphasize that no material facts were disputed at summary judgment. In his appellate brief Huon accuses the district court of deciding disputed issues of material fact in favor of the defendants, but his brief identifies no example that we can see, and when we pressed him at oral argument to cite even one instance, he could not. Huon's real grievance, as far as we can tell, is that the district court accepted as true those statements of material fact from the defendants which he *disagreed with* but did not *contradict* with evidence. But that is how summary judgment works; properly supported statements of material fact are deemed to be undisputed unless the opposing party produces admissible, contradictory evidence. *See* FED. R. CIV. P. 56(e)(2); *Tindle v. Pulte Home Corp.,* 607 F.3d 494, 495–96 (7th Cir. 2010); *United States v. 5443 Suffield Terrace, Skokie, Ill.,* 607 F.3d 504, 510–11 (7th Cir. 2010). And factual disputes about immaterial matters are irrelevant. *See Montgomery v. Am. Airlines, Inc.*, 626 F.3d 382, 389 (7th Cir. 2010). With that in mind we set out the undisputed facts, though in the light most favorable to Huon as the opposing party. *See Nova Design Build, Inc. v. Grace Hotels, LLC,* 652 F.3d 814, 817 (7th Cir. 2011); *Rain v. Rolls-Royce Corp.,* 626 F.3d 372, 376 (7th Cir. 2010).

Around midnight on June 29, 2008, the sheriff's department in Madison County, Illinois, was alerted that two different 911 callers had reported that a woman banged on their doors yelling hysterically that someone was trying to kill her. Sheriff's deputies went to the second home where the woman, Dianna Counts, was waiting inside. She told the deputies that she had been kidnapped and sexually assaulted.

The next morning, William Marconi and David Vucich, both detectives with the sheriff's department, were assigned to investigate. They did not personally interview the 911 callers, relying instead on another deputy's report. They did interview Counts that afternoon. She told them she had answered an ad seeking help promoting an alcohol brand; the man who had posted the ad identified himself as "John" and offered $35 to $40 per hour. The previous evening, Counts continued, they had met for the first time at a bar in St. Louis, Missouri. Afterward, Counts said, they visited two more bars, discussing her career and possible promotional work. They then headed for a nightclub, with John driving because Counts's car was low on gas. When he passed the exit for the club, she explained, she became nervous and asked where they were going. It was at that point, Counts told the detectives, that John started groping her and pulling at her clothing; she protested, but he grabbed her, digitally penetrated her, and forced her to

perform oral sex. When John left the highway, she jumped from the slowing car, leaving her purse with her ID and cellphone inside.

Counts gave the detectives the phone number John had used to contact her. An Internet search linked the number to Sprint, so the detectives sent the carrier a form asserting "exigent circumstances," *see* 18 U.S.C. § 2702, justifying disclosure of subscriber information and call records. The detectives stated in their request that the phone had been used to "facilitate a sexual assault" and that they believed the suspect might have offended in the past and might do so again. Sprint responded that the number had been sold to Virgin Mobile, and Virgin Mobile in turn said it was assigned to a prepaid phone registered to "John Rogers," who gave as his mailing address a P.O. Box number, which the detectives determined to be fictitious. Sprint disclosed the requested call records, and from the list of outgoing calls the detectives discovered that "John," a products promoter, had made unsolicited recruiting calls to four women using the same "marketing promoter" pitch given Counts; these women had refused to meet with him because they were suspicious. A Sprint employee told the detectives that the phone could be "pinged" to find it, so on July 1, 2008, the detectives obtained and executed a search warrant for the location, which was an apartment in Chicago.

That same day, July 1, the detectives contacted the Chicago Police Department, requesting surveillance of the phone's location and giving them Counts's general description of the suspect, including that he was Asian. Chicago police officer Brian McKendry visited the location, a three-flat, and saw by the entrance a package addressed to Meanith Huon in the upper unit. Thinking that name sounded Asian, McKendry relayed it to the detectives, who accessed the photo from Huon's driver's license and also found more pictures of him online. Huon looked like the man seen with Counts in a surveillance video from a bar, and other information the detectives had found online matched details given by Counts. The detectives obtained from a Madison County circuit judge a warrant to search Huon's apartment in Chicago.

Before the day ended, the two detectives traveled to Chicago and executed the search warrant with backup from Chicago police officers (including McKendry). In a trash bag in a closet the officers found Counts's purse and the phone Huon had used to call her. Huon was arrested and interviewed at a Chicago police station by Detective Marconi with Officer McKendry present for part of the time. After *Miranda* warnings, Huon said that Counts had agreed to "hang out" with him for $10 to $20 an hour and willingly performed oral sex but then threatened to claim she had been forcefully assaulted unless he paid her $500. She got out of his car voluntarily, he added.

Huon was charged in the Circuit Court of Madison County with criminal sexual assault. *See* 720 ILCS 5/12-13(a)(1) (since renumbered as 5/11-1.20(a)(1)). The sheriff's department issued a press release announcing the arrest and saying that Huon would be transferred to Madison County, where the investigation was continuing.

Huon filed a motion to suppress, arguing, among other things, that the detectives had lacked exigent circumstances to justify seeking records from Sprint without a search warrant. Huon argued that the detectives did not know he had called other women until after they reviewed the phone records. Detectives Marconi and Vucich and Chicago officer McKendry testified at the hearing. To prepare McKendry reviewed Marconi's case report and a "short three-page summary" (which, Huon says, was the detective's supplemental report). The state court denied the motion, reasoning that exigent circumstances had existed because Counts's purse with identifying information was still in Huon's possession and that, under 18 U.S.C. § 2702, the appropriate inquiry was whether Sprint had acted in good faith in producing the records. The case then proceeded to trial, where Counts and the homeowners who called 911 testified. Huon was acquitted on May 6, 2010. That same day, the State's Attorney told reporters, "We thought our witness was credible, but apparently the jury did not."

Meanwhile, in July 2009, while Huon was awaiting trial, Counts had notified the detectives and prosecutors that she had read a blog, meanithhuon.wordpress.com, which included Huon's name, information about him, and his contact information. During a later recorded interview, she told the detectives that the blog included many entries she thought were about her because they mentioned the last woman Huon had kissed, who was from Carlinville, Counts's hometown. And, Counts continued, there were posts directed to "Dede," a nickname she used in her e-mail address. Counts also said she suspected that Huon had visited her MySpace page because, after she had posted about making lemonade out of lemons, he wrote on his own page: "I'm not a lemon. I love you. Marry me." After that, Counts told the detectives, she posted a message saying, "If you're a psycho, fuck off," and Huon then deleted his blog (though he later reactivated it). Detectives Marconi and Vucich later matched Huon's IP address to this blog by serving a search warrant on WordPress.com, the host of the blog, and subpoenaing Comcast, his Internet service provider.

On July 17, 2009, the two detectives obtained, from the Madison County court where the sexual-assault charge was pending, an arrest warrant alleging that Huon had violated his bond conditions. That warrant was executed by Chicago police officers, who allowed Huon to change clothes, but not privately. Huon was transferred from

Chicago to the jail in Madison County, where he was strip-searched. He was formally charged by indictment with cyberstalking and witness harassment, *see* 720 ILCS 5/12-7.5(a), 5/32-4(b), but prosecutors dismissed those charges *nolle prosequi* after Huon was acquitted of the sexual assault.

In May 2011, Huon filed this action in federal court in Chicago. His 69-page amended complaint asserted 22 claims against Madison County and its sheriff's department, Detectives Marconi and Vucich, two sheriff's department supervisors, the (former) Madison County State's Attorney and two assistants directly involved in the case, the City of Chicago, Officer McKendry, and two other, unidentified Chicago police officers. The brunt of the allegations, though, were targeted at Marconi, Vucich, and McKendry. Huon claimed that he had been falsely arrested and maliciously prosecuted in violation of federal and state law, denied his right to due process as defined in *Brady v. Maryland*, 373 U.S. 83 (1963), defamed in violation of federal and state law, and strip searched in violation of state law. He also brought claims alleging violations of federal statutes governing pen registers and stored electronic communications, *see* 18 U.S.C. §§ 2701–12, 3121–27, claims of conspiracy under federal and state law, and several other state-law claims over which the district court declined to exercise supplemental jurisdiction. On appeal Huon has abandoned his unadjudicated state-law claims.

On the motion of the Madison County defendants, the case was transferred from the Northern District of Illinois to the Southern District of Illinois, where almost all of the defendants and witnesses lived and most of the events occurred. All of the defendants then moved for summary judgment, arguing that many of Huon's claims were untimely or barred by immunity doctrines. The defendants also argued that probable cause precluded Huon's claims for false arrest and malicious prosecution, and that Huon did not state a *Brady* claim because he was never convicted.

In granting summary judgment for the defendants, the district court reasoned that Huon did not state a *Brady* claim based on his 2009 indictment for witness harassment and cyberstalking because those charges never went to trial, and that his *Brady* claim arising from the 2008 charge for sexual assault was groundless because the information that Huon said investigators had withheld was immaterial to the decision to proceed with the case. The district court further reasoned that probable cause existed to charge Huon both in 2008 and 2009, which defeated his claims of false arrest and malicious prosecution. And, the court continued, the allegedly defamatory statements made by defendants were factually accurate or nonactionable opinions. The court also ruled that many of Huon's claims were barred by statutes of limitations and immunity

doctrines, and that Madison County, its sheriff's department and the department's supervisors, and the City of Chicago could not be liable under any theory. The district court did not address Huon's claims concerning pen registers and stored electronic communications because, the court reasoned, Huon had abandoned those claims by saying nothing about them after the defendants moved for summary judgment.

## II. Discussion

On appeal Huon lodges several challenges to the grant of summary judgment and also argues that venue over his suit should not have been transferred to the Southern District of Illinois. We start with Huon's contention that the district court did not address his claim that the defendants had withheld evidence in violation of his right to due process. That assertion is unfounded; the district court understood Huon to raise a *Brady* claim, which is a due process analysis. And Huon is mistaken if he suggests instead that the district court should have analyzed *other* claims in his complaint through the lens of due process. *See Serino v. Hensley*, 735 F.3d 588, 593–94 (7th Cir. 2013) (noting that claims must be analyzed under appropriate constitutional amendment, not due process generally).

Although we have expressed doubt that a defendant who was acquitted at trial can establish the requisite prejudice to prevail on a *Brady* claim, we have assumed that prejudice possibly could be established by showing that prompt disclosure of withheld, material evidence would have altered the prosecutor's decision to go to trial. *See Mosley v. City of Chicago*, 614 F.3d 391, 397–98 (7th Cir. 2010); *Parish v. City of Chicago*, 594 F.3d 551, 554 (7th Cir. 2009); *Bielanski v. Cnty. of Kane*, 550 F.3d 632, 644–45 (7th Cir. 2008). That would mean, as the district court recognized, that a *Brady* claim concerning the 2008 charge for sexual assault would not be foreclosed as a matter of law. On the other hand, as the district court further understood, Huon has no possible claim under *Brady* concerning the 2009 charges that were dismissed before trial. *See Ray v. City of Chicago*, 629 F.3d 660, 664 (7th Cir. 2011).

As for the charge of sexual assault, the district court correctly concluded that Huon lacked evidence of a *Brady* violation. Huon counts three pieces of evidence that he says were impermissibly withheld from him: the "short three-page summary" reviewed by Chicago officer McKendry in preparing to testify at the suppression hearing, an unofficial "street file" that McKendry created in 2008 when he began hunting the owner of the "pinged" cell phone, and the recorded interview of Counts from July 2009. The last of these, Counts's interview, concerned only the 2009 charges and, thus, is irrelevant.

Huon cannot rest a *Brady* claim on the summary or the "street file." He says—and we accept—that the summary actually was Detective Marconi's supplemental report. That means, Huon explains, that McKendry must have testified falsely at the suppression hearing because his testimony was not based on personal knowledge. But testimony is not false just because it's hearsay, and in Illinois hearsay is admissible at a hearing on a motion to suppress. *See People v. Patterson*, 735 N.E. 2d 616, 628 (Ill. 2000). Moreover, we do not understand how sharing the detective's supplemental report with Huon would have altered the *prosecution's* decision to go to trial on the sexual-assault case; after all, McKendry got the report from prosecutors, so they obviously knew about it. And as for the "street file," Huon asserts that inside was a picture of him found online, which, he insists, proves that McKendry—and by implication the two Madison County detectives—knew his identity even before McKendry began looking for "John's" cell phone. The presence of the photo, though, tells nothing about when McKendry placed it in his file. Anyway, this scenario is not remotely "exculpatory"; no matter when McKendry obtained it, the photo does not undermine the accusation of a sexual assault.

Huon next challenges the district court's conclusion that probable cause supported the charges in both 2008 and 2009. Regarding 2008, Huon first contends that probable cause was lacking because, he says, Counts never accused him of using or threatening to use force, a statutory element of sexual assault in Illinois. *See* 720 ILCS 5/12-13(a)(1) (since renumbered as 5/11-1.20(a)(1))**.** This contention is nonsense. The sheriff's department's investigative report recounts the force alleged: Huon started by repeatedly putting a hand on Counts's leg and elsewhere as she batted it away, then he pushed up her bra and groped her breasts before pulling aside her skirt and underwear, and then he penetrated her digitally and grabbed her neck and forced her down while commanding her to perform oral sex. Huon does not assert that the investigative report misrepresents what Counts told the detectives, and Counts's statement was enough to establish probable cause. *See Harney v. City of Chicago*, 702 F.3d 916, 923 (7th Cir. 2012); *McBride v. Grice*, 576 F.3d 703, 707 (7th Cir. 2009); *Pasiewicz v. Lake Cnty. Forest Pres. Dist.*, 270 F.3d 520, 524 (7th Cir. 2001).

Huon also contends that the detectives lacked probable cause because, he says, they did not corroborate Counts's story. Again Huon ignores the record; the detectives listened to the 911 calls, reviewed video surveillance from the bars Huon visited with Counts, located him in Chicago by tracking the phone he had used to contact her, confirmed that four other women had received the same false "products promoter" pitch from Huon, and found Counts's missing property and "John's" cell phone stashed in a trash bag in his apartment closet. As best we can tell from the oral argument, Huon

really contends that, if the detectives had done even *more*, they eventually would have disbelieved Counts. More was not required: Investigators cannot ignore "clearly exculpatory facts," *Stokes v. Bd. of Educ. of the City of Chicago*, 599 F.3d 617, 624 (7th Cir. 2010), but they are not compelled to seek more information undermining probable cause once it is established, *see Hodgkins ex rel. Hodgkins v. Peterson*, 355 F.3d 1048, 1061 (7th Cir. 2004); *Pasiewicz*, 270 F.3d at 524.

Huon further maintains that the detectives lied in their request for phone records because they told Sprint that they suspected he had offended previously. Although Huon's argument is vague, he implies that this purported misrepresentation tainted the phone records, which in turn tainted the later search warrants. One problem with this theory is that Huon had no constitutionally protected expectation of privacy in his subscriber information or the phone numbers he dialed. *See Smith v. Maryland*, 442 U.S. 735, 742 (1979); *United States v. Clenney*, 631 F.3d 658, 666 (4th Cir. 2011); *United States v. Bynum*, 604 F.3d 161, 164 (4th Cir. 2010); *United States v. Perrine*, 518 F.3d 1196, 1204–05 (10th Cir. 2008). And if there was a violation of the Stored Communications Act (which seems to be Huon's contention), suppression of the evidence would not have been an appropriate remedy. *See* 18 U.S.C. §§ 2707–08; *United States v. Chaparro-Alcantara*, 226 F.3d 616, 621 (7th Cir. 2000) ("Application of the exclusionary rule is only appropriate when the Constitution or a statute requires it."); *United States v. Guerrero*, 768 F.3d 351, 358 (5th Cir. 2014) (concluding that exclusionary rule is inapplicable to violations of Stored Communication Act); *United States v. Clenney*, 631 F.3d 658, 666–67 (4th Cir. 2011) (same); *United States v. Perrine*, 518 F.3d 1196, 1201–02 (10th Cir. 2008) (same); *United States v. Smith*, 155 F.3d 1051, 1056 (9th Cir. 1998) (same); *see also United States v. Thousand*, 558 F. App'x 666, 669 (7th Cir. 2014) (nonprecedential decision) (same).

Another problem with Huon's theory about the Sprint records is that he does not contend that the warrant applications would have been rejected absent the allegedly tainted information from those records. *See United States v. Scott*, 731 F.3d 659, 664 (7th Cir. 2013), *cert. denied*, 134 S. Ct. 1806 (2014). Indeed, both applications included enough detail to establish probable cause without discussing the other women who were found using the phone records. Counts's accusations and her identification of the phone number "John" had used to contact her established probable cause for the warrant to ping and locate the phone. The coordinates of that ping combined with the rest of the known information established probable cause for the search of Huon's apartment. Therefore, even accepting Huon's argument that the initial "exigent circumstances" request to Sprint was inaccurate, both later search warrants still were valid without the information about the other women Huon called. *See id.; United States v. Markling*, 7 F.3d

1309, 1316 (7th Cir. 1993). And the fruits of the warrants—Counts's property and Huon's interview—further established probable cause to arrest and prosecute.

Huon also challenges the district court's determination that probable cause existed for the 2009 charges. The factual underpinning for these charges was thinner than for the sexual assault, but still sufficient. *See* 720 ILCS 5/32-4(b) (making it a crime to attempt to deter a witness from testifying by indirectly communicating a threat); *id.* 5/12-7.5(a) (superseded effective August 10, 2009) (making it a crime to harass and place another person in reasonable apprehension of bodily harm through use of electronic communication on two or more occasions); *People v. Cardamone*, 90f N.E.2d 806, 816 (Ill. 2009) (concluding that evidence was sufficient to convict for unlawful communication with witness where defendant called 911 operator and falsely reported that witness was drinking and driving, which prompted police to subject witness to unwarranted and "nerve-racking" car stop); *People v. Sucic*, 928 N.E.2d 1231, 1246 (Ill. App. Ct. 2010) (upholding conviction for cyberstalking where defendant sent e-mails and left voice messages telling victim that he would kill himself and take her with him). Detective Vucich and the lead prosecutor read Huon's blog, which included references to his love for the last woman he kissed from Carlinville (the city of residence listed on Counts's driver's license, which had been in Huon's possession). The blog stated that the author loved the woman from Carlinville, wanted to marry her, and had been looking for her. Counts told both Vucich and the prosecutor that she thought the blog posts referenced her, and they testified at their depositions that Counts had been distressed by the posts. She believed Huon was trying to communicate with her and was frightened.

Huon frivolously argues that it is not possible any longer to prove that he wrote the offending posts because the blog has been taken down and thus, he says, the paper printouts still in the defendants' possession cannot be linked back to him or authenticated as accurate representations of the electronic entries. But what matters is what was known when he was arrested and charged. *See Maniscalco v. Simon*, 712 F.3d 1139, 1143 (7th Cir. 2013). The blog, meanithhuon.wordpress.com, was live when the detectives and prosecutors viewed it. It displayed Huon's name and had an "About Me" section containing his contact information and other personal details, so it was reasonable to conclude that he authored the entries. That the detectives did not confirm that the blog originated from his IP address until after Huon was arrested is irrelevant: Viewing the entries was enough to establish probable cause.

As the district court ruled, because probable cause supported both arrests and prosecutions, several of Huon's other claims necessarily fail. Probable cause is a bar to

claims of false arrest under 42 U.S.C. § 1983, *see Maniscalco*, 712 F.3d at 1143; *McBride*, 576 F.3d at 707, as well as to claims of malicious prosecution under Illinois law, *see Johnson v. Saville*, 575 F.3d 653, 659 (7th Cir. 2009); *Hurlbert v. Charles*, 938 N.E.2d 507, 512 (Ill. 2010). And, independent of probable cause, Huon's § 1983 claims for malicious prosecution fail because Illinois provides a tort remedy. *See Ray*, 629 F.3d at 664; *Parish*, 594 F.3d at 553.

Huon next challenges the grant of summary judgment on his defamation claims. Those claims were grounded both in state law and the Due Process Clause, though the latter is irrelevant unless the defamation causes a right or status recognized by state law to be "distinctly altered or extinguished," which Huon has never alleged. *Abcarian v. McDonald*, 617 F.3d 931, 941 (7th Cir. 2010) (internal quotations omitted). Huon identifies three things as defamatory. First, he argues that the 2008 press release issued by the sheriff's department recounting Counts's version of events defamed him because, he says, the release asserts several untruths as fact. The release reports, however, that Huon had been accused of a crime and recites Counts's allegations, clearly attributing those allegations to her. Huon does not dispute that Counts *did* allege what the press release reports, which defeats a claim for defamation. *See Beischel v. Stone Bank Sch. Dist.*, 362 F.3d 430, 439 (7th Cir. 2004); *Voyles v. Sandia Mortg. Corp.*, 751 N.E.2d 1126, 1133 (Ill. 2001). Second, Huon asserts that the State's Attorney's comment to the press vouching for Counts's credibility was defamatory because the statement conveyed that she was believable despite his acquittal. But the statement was an opinion and, thus, not actionable. *See Giant Screen Sports v. Canadian Imperial Bank of Commerce*, 553 F.3d 527, 533 (7th Cir. 2009). Finally, Huon asserts that an article relaying the contents of his blog must have relied on information supplied by the defendants. But he simply speculates that a defendant disclosed content from his blog to the media and does not argue that any defendant in fact made a defamatory statement, so this defamation claim fails as well. *See Strasburger v. Bd. of Educ., Hardin Cnty. Cmty. Unit Sch. Dist. No. 1*, 143 F.3d 351, 357 (7th Cir. 1998); *Green v. Rogers*, 917 N.E.2d 450, 459 (Ill. 2009).

All that remain are Huon's claims resting on theories of "conspiracy," municipal liability, and respondeat superior. Since no claim against any individual defendant survives, there is no basis for liability against Madison County, the sheriff's department and its supervisors, the former State's Attorney, and the City of Chicago. *See League of Women Voters of Chicago v. City of Chicago*, 757 F.3d 722, 727 (7th Cir. 2014) (explaining that § 1983 does not permit liability under theory of respondeat superior); *Petty v. City of Chicago*, 754 F.3d 416, 424–25 (7th Cir. 2014) (explaining that without constitutional injury there is no basis for liability under *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978)); *Smith v. Gomez*, 550 F.3d 613, 617 (7th Cir. 2008) ("[C]onspiracy is not

an independent basis of liability in § 1983 actions."); *Bublitz v. Cottey*, 327 F.3d 485, 488 n.3 (7th Cir. 2003) (explaining that conspiracy liability under 42 U.S.C. § 1985(3) depends on proof of underlying constitutional violation); *Lawlor v. N. Am. Corp. of Ill.*, 983 N.E.2d 414, 427 (Ill. 2013) (explaining that employer cannot be liable under theory of respondeat superior under Illinois law without tort of employee); *Adcock v. Brakegate, Ltd.*, 645 N.E.2d 888, 894 (Ill. 1994) (explaining that conspiracy under Illinois law requires tort committed in furtherance of agreement).

Huon's remaining contentions merit little discussion. First, he disputes the district court's conclusion that he abandoned his claims involving pen registers and stored electronic communications. But there was no pen register, so really he must be talking about the Stored Communications Act. But he did not mention that federal law at summary judgment. Second, Huon spends much time discussing the "strip searches" in 2009, the first at his apartment when an arresting officer remained in the room while he changed clothes and the second after he was transferred to the jail in Madison County. Although on appeal Huon tries to recast this as a § 1983 claim, it was litigated in the district court entirely as a state-law claim. The Illinois Tort Immunity Act imposes a one-year statute of limitations for all claims against municipal employees, *see* 745 ILCS 10/8-101; *Bridewell v. Eberle*, 730 F.3d 672, 678 (7th Cir. 2013), and that period had expired long before Huon filed this federal action in May 2011. Finally, Huon contends that his suit should not have been transferred to the Southern District of Illinois. But the district judge in the Northern District evaluated the factors in 28 U.S.C. § 1404(a), explaining that transfer was appropriate because all nonparty witnesses and all defendants except McKendry and the City of Chicago were located in the Southern District, where almost all relevant events occurred. We perceive no abuse of discretion. *See Research Automation, Inc. v. Schrader-Bridgeport Int'l, Inc.*, 626 F.3d 973, 979 (7th Cir. 2010).

### III. Conclusion

Huon's remaining points do not require discussion. We have reviewed all of his arguments and conclude that none has merit. Accordingly, the judgment is AFFIRMED.