In the

# United States Court of Appeals

## For the Seventh Circuit

No. 14-3223

MARY ZAPPA and RANDALL HAHN,

*Plaintiffs-Appellants*,

*v.*

CARLOS GONZALEZ, *et al.*,

*Defendants-Appellees*.

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 13 C 6623 — **Thomas M. Durkin**, *Judge*.

ARGUED NOVEMBER 3, 2015 — DECIDED APRIL 18, 2016

Before WOOD, *Chief Judge*, EASTERBROOK, *Circuit Judge*,
and BRUCE, *District Judge*.[*]

WOOD, *Chief Judge*. This case involves a consumer dispute
that blew up, unfortunately, into a federal case. Plaintiffs
Randall Hahn and Mary Zappa thought that they had pur-
chased a certain motorcycle, but it turned out that they had

---

[*] The Hon. J. Colin Bruce, of the Central District of Illinois, sitting by des-
ignation.

the wrong one. Conversations between them and the dealer-
ship degenerated into accusations of theft, which led to the
involvement of the police. In the end, Hahn returned the mo-
torcycle. Believing that their rights under the Fourth
Amendment and state law had been violated, however, he
and Zappa filed this lawsuit against the private entities in-
volved, the municipality, and the police officer who was
swept up in this dispute. The district court dismissed the
federal claims and declined to exercise supplemental juris-
diction over the state theories, and this appeal follows. We
affirm.

## I

Matters began simply enough when, in early July 2013,
Hahn spotted an internet advertisement for a black FLTHTC
Harley-Davidson motorcycle ("the 1997 motorcycle"), which
was available at City Limits Harley Davidson (formally
OAG Motorcycle Ventures, Inc.). City Limits is located in
Palatine, Illinois, northwest of Chicago. Interested, Hahn and
Zappa went on July 19 to the dealership and test-drove a *dif-
ferent* motorcycle ("the 2004 motorcycle"). They examined
the motorcycle they had tested and took a few pictures, and
then let City Limits know that they wanted to buy it. That
was where the confusion became serious: Hahn and Zappa
thought that they were buying the 2004 motorcycle, but the
bill of sale listed the VIN, the year, and the mileage for the
1997 motorcycle. There was a significant difference between
the two motorcycles: the newer model had roughly half the
mileage of the older one, and so presumably was worth
more than the advertised one. Hahn and Zappa paid $6,500
(exclusive of taxes and fees) for the motorcycle they thought
they were buying and made a down payment of $1,626.66;

the remaining balance was $6,000. On July 22, they returned to City Limits, paid the rest of the money, and drove the 2004 motorcycle home. At no time did they spot the fact that the VIN and other identifying information on the paperwork did not correspond to the motorcycle they were given.

The next day, they tried to arrange insurance for their new motorcycle. It was then that they discovered that the bill of sale had the wrong VIN. A little bit of detective work revealed that their bill of sale described the 1997 motorcycle, not the 2004 motorcycle. Hahn thought this was just a scrivener's error and called City Limits to ask it to provide the correct information for the 2004 motorcycle. Initially he was able only to leave a message; later, he spoke with Garrison Bennett, City Limits's sales manager. Bennett promised to call him back. Hahn received not one, but six phone calls from the dealership, and none was to his liking. In one, Bennett said that if Hahn and Zappa wanted to keep the 2004 motorcycle, they would need to pay an additional $1,000; in another, City Limits upped the ante and said it would redo the paperwork only for an additional $2,500. Hahn believed that he owed nothing more and rejected anything along these lines. Eventually, City Limits threatened a couple of times to report to the police that Hahn had stolen the 2004 motorcycle. (Illinois law states that "[a] person commits theft when he or she knowingly … exerts unauthorized control over property of the owner." 720 ILCS 5/16-1(a)(1). It thus does not appear to matter whether the original taking was or was not authorized.) Hahn said that he wanted to consult a lawyer about the whole situation.

At 7:16 p.m. on July 24, Hahn received a call from Officer Carlos Gonzalez of the Palatine Police Department. Gonzalez

told him that the police had a report that Hahn had stolen a motorcycle and unless he returned it that night, Gonzales would come to arrest Hahn and Zappa. Gonzalez was acting on information he had received from City Limits; he had been dispatched to the dealership and had been told that Hahn had bought a 1997 black Harley, but had somehow driven off in a 2004 model. The general manager told Gonzalez that "he just wanted the motorcycle returned, and [that] Randall could have the motorcycle he actually bought."

Hahn and Zappa argue that this account of Gonzalez's visit to City Limits shows that he knew that at worst this was a civil matter that arose from a mistake—not a crime. Hahn said as much to Gonzalez over the telephone, and he accused City Limits of a bait-and-switch tactic. Gonzalez was unmoved by this explanation and threatened to come to Hahn and Zappa's house and arrest Hahn for grand theft if the motorcycle was not returned that night.

More phone calls ensued, but eventually Hahn took action. He picked up the motorcycle from the place where he was storing it and took it to the Lake Zurich, Illinois, Police Department, which was near his home. He explained to the police there that he did not want to take it to Palatine, because he was afraid that he might be arrested there. The Lake Zurich police took the motorcycle, called Officer Gonzalez, and Gonzalez went to Lake Zurich with a City Limits employee and retrieved it. According to the Lake Zurich police, the motorcycle was never actually reported as stolen. This left one item of unfinished business: the refund of Hahn and Zappa's $7,626.66. They represent in their brief to this court that they have neither gotten that money back, nor has

City Limits offered to give them the 1997 Harley that it says was the correct motorcycle.

Hahn and Zappa lost little time in filing this lawsuit against everyone who had played a role in their unpleasant experience: OAG Motorcycle Ventures, Inc., d/b/a City Limits Harley Davidson; Jeffrey J. Smith, City Limits's general manager; Garrison Bennett, City Limits's sales manager; Officer Gonzalez, and the Village of Palatine. They alleged that Officer Gonzalez violated their Fourteenth Amendment rights by depriving them of their property without due process; they sought indemnification from the Village pursuant to 745 ILCS 10/9-102, and they alleged that the Harley defendants (City Limits, Smith, and Bennett) had violated the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 510/2. Federal-question jurisdiction supported the first count, and supplemental jurisdiction supported the other two counts. See 28 U.S.C. §§ 1331, 1367. The district court granted Officer Gonzalez's motion to dismiss the claim against him, and it declined to exercise supplemental jurisdiction over the state claims.

## II

In order to proceed against Officer Gonzalez (and the Village, for indemnification, though we need not repeat that), Hahn and Zappa must show that they had a property interest in the motorcycle and that he did something wrong when he contacted them and threatened to arrest Hahn if Hahn did not return it to City Limits. We will assume for present purposes that they did have a sufficient property interest in the 2004 motorcycle in their possession to support a constitutional claim. We will also assume (though we are stretching here) that an officer's threat to arrest someone, conveyed

over the telephone, is enough to raise constitutional concerns. Even on this generous basis, the case can be resolved readily. The dispositive question is whether Officer Gonzalez had probable cause to believe that their possession of the 2004 motorcycle was unlawful.

Probable cause does not require legal certainty, nor does it demand that all the facts in the officer's possession point in only one direction. See, *e.g.*, *Fox v. Hayes*, 600 F.3d 819, 833 (7th Cir. 2010). As the Supreme Court put it long ago, "[probable] cause exists where the facts and circumstances within [the officers'] knowledge and of which they had reasonably trustworthy information (are) sufficient in themselves to warrant a man of reasonable caution in the belief that an offense has been or is being committed." *Brinegar v. United States*, 338 U.S. 160, 175–76 (1949) (internal quotation marks omitted).

With this in mind, we ask whether Officer Gonzalez had reasonably trustworthy information that Hahn and Zappa were in possession of a motorcycle that did not belong to them and that they were refusing to return it to its rightful owner, City Limits. Putting to one side the overreaction that this incident seems to have sparked in everyone concerned, we think that he did. Gonzales visited City Limits personally, and there he learned that Hahn and Zappa had driven off in the 2004 motorcycle, while the price they paid and all the information on the paperwork revealed that this was not their vehicle. Gonzalez had no duty to investigate defenses that Hahn and Zappa might have. See *Baker v. McCollan*, 443 U.S. 137, 145–46 (1979). By the same token, the fact that the situation seems to have escalated far too quickly into allegations of criminal misbehavior, rather than a civil dispute

over a mistaken delivery, does not undermine Officer Gonzalez's probable cause. Civil law and criminal law are not hermetically sealed off from one another; the choice of one or the other is a typical prosecutorial matter, and as long as probable cause exists, the police do no wrong in taking investigatory steps.

This case is a far cry from the situation the Supreme Court faced in *Soldal v. Cook County, Ill.*, 506 U.S. 56 (1992), in which law enforcement officers helped a private mobile-home-park owner forcibly detach a home from its spot and tow it off. The deputy sheriffs knew that the park owner did not have an eviction order and that its actions were unlawful. *Id.* at 59. Under those circumstances, the Supreme Court concluded that the seizure and removal of the family whose home was carried away implicated their Fourth Amendment rights. Following *Soldal*, we have said that in general the Fourth Amendment governs property seizures when there is "some meaningful interference with an individual's possessory interests" in the property. *Pepper v. Village of Oak Park*, 430 F.3d 805, 809 (7th Cir. 2005). Here, no such interference occurred. No one ever took the 2004 motorcycle from Hahn and Zappa, and neither one of them was ever arrested. The worst that happened was a threat of arrest, to which Hahn responded by returning the motorcycle to the Lake Zurich police.

There is no allegation in this case that Officer Gonzalez violated any state law by making the telephone calls he did, or by facilitating the return of the 2004 Harley to City Limits. And even if there were such an allegation, it is well established that the federal constitution is not automatically violated every time the police fail to follow state or local rules.

Hahn and Zappa did include state-law claims in their complaints, but only against the private actors. These claims fell only under the district court's supplemental jurisdiction. Once the court concluded that the federal claims against Gonzalez and the related indemnification claim against the Village had to be dismissed, it decided to relinquish jurisdiction over the state claims. It did not abuse its discretion in doing so. Should Hahn and Zappa choose to pursue those claims in Illinois's courts, they will be free as well to ask those courts for whatever restitution or money damages they may be owed for the returned motorcycle.

The present case, however, was correctly dismissed, and so we AFFIRM the judgment of the district court.