NONPRECEDENTIAL DISPOSITION

To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued June 8, 2016
Decided July 5, 2016

**Before**

WILLIAM J. BAUER, *Circuit Judge*

DANIEL A. MANION, *Circuit Judge*

MICHAEL S. KANNE, *Circuit Judge*

No. 15-3197

| | |
|---|---|
| UNITED STATES OF AMERICA, <br> *Plaintiff-Appellee*, | Appeal from the United States District Court for the Central District of Illinois. |
| v. | No. 1:14-cr-10031-JES-JEH-1 |
| DION T. MILLER, <br> *Defendant-Appellant*. | James E. Shadid, <br> *Chief Judge*. |

**O R D E R**

Dion Miller pleaded guilty to possessing crack cocaine with intent to distribute, *see* 21 U.S.C. § 841(a)(1), but he reserved the right to challenge the district court's denial of his motion to suppress drugs seized incident to his arrest. Because we conclude that the police had probable cause to arrest Miller, we affirm the district court's judgment.

In April 2014 police in Bloomington, Illinois, arrested Miller without a warrant when his train from Chicago arrived at the station. A search incident to arrest uncovered roughly 26 grams of crack cocaine and a small amount of cannabis hidden in Miller's boxer shorts. The matter was referred to federal authorities, and Miller was

indicted on charges that he possessed the crack with intent to distribute, and also that he had sold crack to an informant during a previous visit to Bloomington. Miller moved to suppress the drugs he brought on the train, arguing that the police had lacked probable cause for the warrantless arrest.

Two police officers were the only witnesses at the suppression hearing. Detective Kevin Raisbeck explained that an informant, "Nicole," had told him about Miller, whom she knew only as "Yo," about a month before his arrest. She knew Yo through her ex-boyfriend and, according to Raisbeck, had said that Yo wanted help selling crack he had brought to Bloomington on an Amtrak train. Raisbeck had checked the train's passenger manifest, recognized Miller's name from a 2009 drug investigation, and remembered that he called himself Yo.

Raisbeck acknowledged that Nicole had not worked with the police before telling him about Miller, and indeed she recently had been targeted herself by an informant trying to buy crack. That sting had hit an unexpected snag, Raisbeck explained, when Nicole stole the informant's money without giving him any drugs. Afterward, the detective conceded, Nicole initially had lied about taking the money when the police confronted her at her apartment. She then admitted the theft, Raisbeck continued, but said the money was hidden in her bedroom when, in fact, it was stashed in the crotch of her pants. By her own admission, Raisbeck added, Nicole had abused marijuana, cocaine, and ecstasy from a young age, and she also had a lengthy criminal history, including multiple convictions for theft and forgery offenses.

Yet despite Nicole's checkered past, the detective recounted, she was recruited as an informant. Two weeks later she disclosed her connection to Yo, and the police decided to set up a controlled buy at a local Jimmy John's restaurant. Raisbeck picked up Nicole from work and had her confirm—based on Miller's booking photo from the 2009 investigation—that Miller was the person she knew as Yo. Then, accompanied by another detective, Raisbeck drove to a secluded parking lot and disclosed the plan to buy crack from Miller. To ensure that Nicole was not carrying drugs or money, Raisbeck searched her two jackets and packet of cigarettes by hand, patted down her legs, visually inspected the back pockets of her pants, and had her pull out her front pockets and shake out her shirt and bra. But, Raisbeck acknowledged, he did not search Nicole's crotch area or have her remove her shoes. Her purse wasn't searched either, but she left that in the car when she entered the Jimmy John's.

Raisbeck then had given Nicole five $20 bills, he said, and told her to call Miller to arrange the meeting. Nicole made two calls. Raisbeck did not record either, but he did direct Nicole to use the speakerphone feature on her phone so that he could listen in. During the first call, Raisbeck recalled, Nicole had said she was "with [her] people" and convinced Miller to meet her at the restaurant. During the second call about ten minutes later, Nicole told Miller that she "needed a hundred." Raisbeck explained that, based on his experience, he had concluded that Nicole's statements during those two calls were consistent with a request to purchase $100 worth of crack cocaine on behalf of her own customer.

Raisbeck was not in the restaurant during Nicole's meeting with Miller, nor was any other officer. When Nicole came out of the restaurant, Raisbeck testified, she had returned to his car and given him a $10 bill and two small bags containing a total of ½ gram of crack that she said came from Miller. Raisbeck searched Nicole again, and then debriefed her. According to the detective, Nicole had said that Miller initially questioned whether she was an informant but made the sale after she assured him that she wasn't. He had even given her a $10 bonus for bringing him the business.

Raisbeck said that he had tried, over the next few weeks, to arrange more buys from Miller, but to no avail—either Miller's phone was turned off, or he would tell Nicole that he was not in Bloomington. Then approximately a month after the buy at Jimmy John's, Nicole had alerted him that Miller would be returning to town. Raisbeck was waiting at the station in Bloomington when Miller's train arrived, and the detective arrested him without a warrant for selling crack to Nicole the month before. That's when the drugs Miller wanted suppressed were discovered.

The government's other witness, Detective Jared Bierbaum, added little. He testified that he conducted video surveillance from a van parked outside the Jimmy John's. The video, which was played at the suppression hearing, shows Miller entering the restaurant within five minutes of Nicole's second phone call, and Nicole entering soon after. The video also shows Miller and Nicole leaving the restaurant about five minutes after Nicole's arrival. But Bierbaum conceded that he did not witness or record the meeting itself because he could not see inside the restaurant from the van.

During the suppression hearing, Miller never questioned the testimony of the two detectives. Instead, Miller argued that Nicole's debriefing after she had left the

Jimmy John's was too unreliable to give the detectives probable cause to believe that Nicole had received the crack from Miller. The district court agreed with Miller that Nicole's background was reason to be suspicious about her debriefing but noted that her statements were corroborated by the train manifest, phone calls, surveillance video, and Nicole's return from the meeting with crack and a $10 bill despite being searched before the meeting for contraband and money. The district court thus concluded that the detectives had probable cause to arrest Miller and denied his motion to suppress.

Miller pleaded guilty to possessing the drugs seized at the train station but reserved the right to contest the denial of his motion to suppress. The district court, in accordance with the plea agreement, sentenced Miller to 168 months' imprisonment, *see* FED. R. CRIM. P. 11(c)(1)(C).

On appeal Miller argues that Raisbeck lacked probable cause to arrest him and thus the district court erred in denying his motion to suppress. We review de novo a district court's determination of probable cause for a warrantless arrest but its underlying factual findings for clear error. *United States v. Reaves*, 796 F.3d 738, 741 (7th Cir. 2015); *United States v. McDonald*, 453 F.3d 958, 960 (7th Cir. 2006).

Miller's contention that probable cause for an arrest was lacking is without merit. Probable cause exists when the facts and circumstances known to the officer at the time of the arrest would lead a reasonable person to believe the arrestee had committed an offense. *United States v. Sands*, 815 F.3d 1057, 1062 (7th Cir. 2015); *United States v. Shields*, 789 F.3d 733, 745–46 (7th Cir. 2015). Miller maintains that Raisbeck's search of Nicole wasn't thorough enough to rule out the possibility that she had hidden the crack and the $10 on her person *before* she met Miller. But "[p]robable cause does not require legal certainty, nor does it demand that all the facts in the officer's possession point in only one direction." *Zappa v. Gonzalez*, 819 F.3d 1002, 1005 (7th Cir. 2016); *see Fox v. Hayes*, 600 F.3d 819, 833 (7th Cir. 2010) (observing that "it does not take much to establish probable cause"). Given everything that Raisbeck knew at the time of the arrest, it was reasonable for him to believe that Miller had sold Nicole drugs.

Although Nicole was a potentially untrustworthy informant, "extensive corroboration may overcome the doubt inherent in relying on an informant without a track record," *United States v. Glover*, 755 F.3d 811, 818 (7th Cir. 2014), and Raisbeck was able to confirm several aspects of her story. Before the meeting, Raisbeck had confirmed that Nicole was right about Miller's nickname, physical appearance, phone number,

history of dealing drugs in the Bloomington area, and recent arrival in town by train. By itself Nicole's proven familiarity with Miller might not have provided probable cause, but her knowledge gave Raisbeck a reasonable basis to think that she could prove to be a reliable informant. *See Alabama v. White*, 496 U.S. 325, 331 (1990) (recognizing that when "an informant is shown to be right about some things, he is probably right about other facts that he has alleged, including the claim that the object of the tip is engaged in criminal activity"); *Illinois v. Gates*, 462 U.S. 213, 244 (1983) (same).

The phone calls that Detective Raisbeck had overheard and the surveillance of the restaurant provided even more corroboration. Although the detectives had not witnessed Miller do or say anything overtly incriminating on the day of the controlled buy, his actions were suspicious when considered in context. For example, Miller entered the restaurant with no apparent legitimate purpose only moments after Nicole had told him she "needed a hundred," a phrase Raisbeck interpreted as a request to purchase $100 worth of crack cocaine. *See United States v. Burnside*, 588 F.3d 511, 518 (7th Cir. 2009) (recognizing that officers are entitled to rely on training and experience in forming belief that drug transaction has occurred); *United States v. Funches*, 327 F.3d 582, 586 (7th Cir. 2003) (same). And Raisbeck reasonably could have thought that the meeting's short duration suggested that its intended purpose was transactional, not social. *See United States v. Bullock*, 632 F.3d 1004, 1013 (7th Cir. 2011) (explaining that police officers reasonably had believed that short meetings of one to five minutes were indicative of drug dealing).

The search of Nicole before she entered the Jimmy John's also provided some corroboration. *Cf. United States v. Scott*, 731 F.3d 659, 665 (7th Cir. 2013) (recognizing that a *properly executed* controlled buy is generally "a reliable indicator as to the presence of illegal drug activity" (internal quotation marks omitted)); *United States v. Sidwell*, 440 F.3d 865, 869 (7th Cir. 2006) (same). True, Raisbeck could have searched Nicole more thoroughly before her meeting with Miller, but the hypothetical possibility that Nicole managed to trick Raisbeck did not negate the existence of probable cause. *See Sidwell*, 440 F.3d at 869 (concluding that controlled buy supported probable cause even though informant could have obtained drugs from any person in one of several units in apartment building where defendant lived); *United States v. McKinney*, 143 F.3d 325, 329 (7th Cir. 1998) (concluding that controlled buys supported probable cause even though police had no surveillance inside retail store where buys occurred and did not fully search untested informant ahead of time); *United States v. Artez*, 389 F.3d 1106, 1111–12 (10th Cir. 2004) (collecting cases and concluding that

"the absence of constant visual contact with the informant conducting the transaction does not render a controlled purchase insufficient, nor does the absence of an audio-recording of the transaction").

In sum, Nicole's account was sufficiently corroborated to lead a reasonable person to believe that Miller had sold her crack. Miller's arrest and the search incident to that arrest were thus lawful, and the district court was correct to deny Miller's motion to suppress. *See Riley v. California*, 134 S. Ct. 2473, 2482 (2014) (recognizing that police officers generally do not need warrant to search person they have lawfully arrested); *United States v. Gary*, 790 F.3d 704, 709 (7th Cir. 2015) (same).

AFFIRMED.