In the

# United States Court of Appeals

## For the Seventh Circuit

No. 14-2941

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

TIMMY J. REICHLING,

*Defendant-Appellant.*

Appeal from the United States District Court for the
Western District of Wisconsin.
No. 3:13-cr-00126-bbc-1 — **Barbara B. Crabb**, *Judge.*

ARGUED FEBRUARY 10, 2015 — DECIDED MARCH 27, 2015

Before POSNER, MANION, and TINDER, *Circuit Judges.*

TINDER, *Circuit Judge.* Defendant-Appellant Timmy
Reichling pleaded guilty to one count of sexual exploitation
of a child, 18 U.S.C. § 2251(a), which charged Reichling with
producing "a visual depiction of [a minor] engaged in sex-
ually explicit conduct onto a Maxwell VHS tape." Reichling
appeals the denial of his motions to suppress, having re-
served the right to do so in his plea agreement. His appeal
raises the issue of whether a search warrant affidavit detail-

ing a largely online relationship between Reichling and a minor victim established probable cause to seize digital and non-digital storage devices—including the aforementioned VHS tape—found at Reichling's residences. We affirm.

## I.    BACKGROUND

At issue is the August 20, 2013 affidavit used to support search warrants of Reichling's parents' home in Darlington, Wisconsin, and a trailer on an adjacent property. The affidavit, signed by a sergeant with the Darlington Police Department, sets forth the following facts: a 14-year-old female victim and an individual who claimed to be the victim's age and named, "Nathan Solman," began an online Facebook relationship in July 2010; between August 2010 and July 2012, the victim sent "Nathan Solman" in excess of 300 "naked pictures of herself in varied sexual positions" from her cell phone; and when she tried to stop sending such pictures, "Nathan Solman" threatened to show the pictures he already possessed to others if she stopped. The internet protocol address associated with the Facebook account of "Nathan Solman" was linked the residence of Reichling's parents in Darlington, Wisconsin.

According to the search warrant affidavit, in July 2012, the victim met "Nathan Solman" for the first time in the backyard of her residence and he appeared to be much older than the victim, with a physical description resembling Reichling. The victim reported that this encounter lasted only a few minutes because her stepfather came outside and "Nathan Solman" quickly left the area. The affidavit also quotes a series of unwanted, threatening, and harassing text messages sent to the victim from March 2013 through June 2013. These text messages included details indicating that

the sender knew the victim and was watching her. According to the affidavit, phone records showed that these text messages were sent from a cellular telephone number registered to Reichling.

Through information gathered from various sources, the affidavit indicates that Reichling either lived in his parent's residence or in a trailer on an adjacent property owned by Reichling's brother. According to the affidavit, Reichling was a registered sex offender, having been convicted of second-degree sexual assault of a 17-year-old female in Green County, Wisconsin, in 1993. Reichling was discharged from probation for this offense on April 1, 2010, approximately four months before "Nathan Solman" began his Facebook relationship with the victim described above.

On the basis of this affidavit, a Wisconsin circuit court judge issued one search warrant for Reichling's parents' residence and one warrant for the adjacent trailer, with both warrants authorizing the seizure of the following: "[i]mages, photographs, videotapes or other recordings or visual depictions representing the possible exploitation, sexual assault and/or enticement of children"; "[a]ll computers and computer hardware devices," including desktops, laptops, cell phones, and any type of camera; and "[i]nternal and peripheral digital/electronic storage devices," including "hard drives," "thumb or flash drives," and "video tapes."

Based upon items seized pursuant to these warrants, a federal grand jury returned an indictment charging Reichling with two counts of producing child pornography, *see* 18 U.S.C. § 2251(a), one count of receiving child pornography, *see id*. § 2252(a)(2), and one count of possession of child pornography, *see id*. § 2252(a)(4). Each count involved different

victims. Reichling responded by filing two motions to suppress the evidence seized at his parent's residence and the adjacent trailer. The district court denied both motions. Reichling then entered into a plea agreement, agreeing to plead guilty to the first count of the indictment and reserving the right to appeal the denial of his motions to suppress. After accepting Reichling's plea, the district court sentenced him to 300 months in prison and a lifetime term of supervised release. Reichling now appeals.

## II.   DISCUSSION

Reichling concedes that the search warrant affidavit established probable cause to believe that he sent the victim the quoted text messages from a cell phone and received naked photos of the victim on a cell phone, but he contends that the affidavit contains no indication that he transferred the photos to any other device. Reichling argues that the affidavit therefore failed to establish probable cause to search for and seize any item other than his cell phone, and the lack of probable cause was so obvious that no reasonable officer could have relied on the validity of the warrants. Reichling reasons that each storage device—from a cell phone to a hard drive to a VHS tape—is "a location just like a warehouse," and "police need probable cause for each separate location that they propose to search." Alternatively, Reichling argues that, even if probable cause existed to search for images on *digital* storage devices—computers, external hard drives, thumb drives and the like—the affidavit did not establish probable cause to search for *non-digital* storage devices, such as the VHS videotape which formed the basis of count one of the indictment.

The law does not accord with Reichling's narrow view of probable cause. While we review a search warrant affidavit's sufficiency *de novo* to the extent that it presents purely legal issues of Fourth Amendment doctrine, in applying those principles to a given case, "we afford great deference to the decision of the judge issuing the warrant, and we will up- hold a finding of probable cause so long as the issuing judge had a substantial basis to conclude that the search was rea- sonably likely to uncover evidence of wrongdoing." *United States v. Aljabari*, 626 F.3d 940, 944 (7th Cir. 2010) (quotation and citation omitted); *see also Illinois v. Gates*, 462 U.S. 213, 238–39 (1983) ("[T]he duty of a reviewing court is simply to ensure that the [issuing judge] had a substantial basis for concluding that probable cause existed.") (quotation omit- ted).

"Probable cause is established when, based on the totali- ty of the circumstances, the affidavit to the judge sets forth sufficient evidence to induce a reasonably prudent person to believe that a search will uncover evidence of a crime." *Unit- ed States v. Scott*, 731 F.3d 659, 665 (7th Cir. 2013) (quotation omitted), *cert. denied*, 134 S. Ct. 1806 (2014). "[P]robable cause is far short of certainty—it requires only a probability or substantial chance of criminal activity, not an actual showing of such activity, and not a probability that exceeds 50 per- cent (more likely than not), either." *United States v. Seiver*, 692 F.3d 774, 777 (7th Cir. 2012) (quotation and citation omit- ted). The task of the issuing judge "is simply to make a prac- tical, common-sense decision whether, given all the circum- stances set forth in the affidavit before him, … there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Gates*, 462 U.S. at 238.

It is important to note that, "in issuing a search warrant, a judge is given license to draw reasonable inferences concerning where the evidence referred to in the affidavit is likely to be kept, taking into account the nature of the evidence and the offense." *Scott*, 731 F.3d at 665 (quotation omitted). For example, in a case involving possible evidence of child pornography or sexual exploitation of a child, the probable cause inquiry "must be grounded in an understanding of both the behavior of child pornography collectors and of modern technology." *United States v. Carroll*, 750 F.3d 700, 704 (7th Cir. 2014) (citing *Seiver*, 692 F.3d at 776–77). Accordingly, "[w]hen a judge receives an application for a search warrant, the judge must make 'a practical, common-sense decision about whether the evidence in the record shows a fair probability that contraband or evidence of a crime will be found in a particular place.'" *Id*. at 703 (quoting *United States v. Miller*, 673 F.3d 688, 692 (7th Cir. 2012)).

Thus, while the law requires judges to be neutral, the law does not require judges to pretend they are babes in the woods. In evaluating search warrant applications, judges may consider what "is or should be common knowledge." *Seiver*, 692 F.3d at 778. When the warrants here were issued in August 2013, it was or should have been common knowledge to judges (like other members of the public) that images sent via cell phones or Facebook accounts may be readily transferred to other storage devices, such as those identified in the warrants.[1] It may have been prudent for the

---

[1] Reichling also complains that the applications are "serious[ly] flaw[ed]" because they "make no effort to explain what the various devices [identified in the applications] are." To the extent the device categories listed in the applications are not common knowledge, the applications offer spe-

agent preparing the search warrant affidavit to have included this fact in the affidavit itself, in case his application ended up on the desk of a Luddite jurist, but we do not think it was required. *See id.* at 777–78. The affidavit also did not specifically assert that "Nathan Solman"—an apparent collector of child pornography—likely would have maintained some or all of the over 300 images he coaxed and coerced from his victim between August 2010 and July 2012, so that the images probably would be found during an August 2013 search. Again, while such an assertion may have been prudent, we do not think it was necessary to make the warrants valid. *See United States v. Newsom*, 402 F.3d 780, 783 (7th Cir. 2005) ("[A]lthough the affidavit before the judge did not explain specifically that collectors of child pornography tend to hold onto their stash for long periods of time, it was clear from the context that the police believed that Newsom probably still had the year-old images or something similar on his computer."); *cf. Seiver*, 692 F.3d at 777–78 (noting that it is common knowledge that even "deleted" computer files are often recoverable). These are examples of an issuing judge being permitted to "draw reasonable inferences concerning where the evidence referred to in the affidavit is likely to be kept, taking into account the nature of the evidence and the offense." *Scott*, 731 F.3d at 665 (quotation omitted).

The Supreme Court has explained:

---

cific examples of each category, which make the meanings adequately clear (e.g., "[i]nternal and peripheral digital/electronic storage devices, including but not limited to internal and external hard drives, floppy disks, zip disks, CD ROM and CD-RW disks, DVD and DVD-RW disks…").

>  A lawful search of fixed premises generally extends to the entire area in which the object of the search may be found and is not limited by the possibility that separate acts of entry or opening may be required to complete the search. Thus, a warrant that authorizes an officer to search a home for illegal weapons also provides authority to open closets, chests, drawers, and containers in which the weapon might be found.

*United States v. Ross*, 456 U.S. 798, 820–21 (1982). The search warrant affidavit in this case established probable cause to believe images of the victim (likely constituting child pornography), Facebook messages, and text messages would be found in Reichling's parents' residence and the adjacent trailer. Given the large number of images at issue, the duration of Reichling's interest in the victim, and the way various storage media work together—as well as "an understanding of both the behavior of child pornography collectors and of modern technology," *Carroll*, 750 F.3d at 704—it was reasonable for the issuing judge to authorize the police to conduct "separate acts of entry or opening," including searching any computers and other storage devices "in which the [images] might be found." *Ross*, 456 U.S. at 820–21. In short, the affidavit was sufficient to show a fair probability that the storage devices identified in the warrants would contain evidence of child pornography—or, as stated in the warrants, "exploitation of children" (the former being a species of the latter, *see* 18 U.S.C. § 2251).

With respect to the non-digital storage media identified in the warrants (e.g., "video tapes"), Reichling adopts too narrow a view of the facts. First, Reichling asserts that it is categorically impossible to transfer digital files, such as those

sent from a cell phone, onto non-digital storage media, such as VHS videotapes. At oral argument, government counsel disputed this assertion, citing a computer program which allows such a transfer. A quick internet search reveals that, apart from computer programs, "[t]here are plenty of … VHS-DVD combo recorders on the market that allow users to internally dub [i.e., copy] VHS tapes to DVD [i.e., digital storage media] *and vice versa*." Brandon Widder, *How to Convert VHS to DVD*, Digital Trends (July 8, 2013), www.digitaltrends.com/home-theater/how-to-convert-vhs-to-dvd/ (emphasis added).

More importantly, Reichling ignores the quoted text messages in the affidavit indicating that he was physically following the victim. The text messages mention the victim's appearance, her lack of a tan while she was at a swimming pool, and her boyfriend. It does not require a great leap of the imagination to think that a person physically stalking a minor from at least July 2012 (when "Nathan Solman" appeared in the victim's backyard) to June 2013 would record images of the victim using either a digital or non-digital recording device. Regardless of whether such images would qualify as "contraband" (such as child pornography), they would constitute "evidence of a crime," and would supply a basis for probable cause. *See Gates*, 462 U.S. at 238. Similarly, it would be reasonable for the police and the issuing judge to view the facts in the affidavit—including those indicating Reichling committed a sex offense with a minor victim in 1993 and had been a collector of child pornography since at least 2010—as providing "ominous hint[s]" of what might be found on both digital and non-digital media in Reichling's residence. *See Newsom*, 402 F.3d at 783. After all, experienced investigator/affiants and reviewing magistrates are entitled

to draw reasonable inferences. Bearing in mind the "great deference" we must give the issuing judge's determination, we find the affidavit supplied a "substantial basis" for the judge's probable cause finding as to non-digital storage media as well as digital. *See Gates*, 462 U.S. at 236.

And even if the warrants were invalid because the affidavit failed to support a finding of probable cause, we agree with the government that the district court's denial of Reichling's suppression motions was proper nonetheless by application of the good-faith exception to the exclusionary rule. In *United States v. Leon*, 468 U.S. 897, 922–23 (1984), the Supreme Court held that even if a search warrant was invalid based upon a lack of probable cause, evidence seized in executing the warrant should not be suppressed if the police officers relied in good faith on the judge's decision to issue the warrant. A law enforcement officer's decision to obtain a warrant is treated as *prima facie* evidence that the officer was acting in good faith. *Miller*, 673 F.3d at 693. A defendant can overcome this evidence of good faith by showing: (1) the issuing judge abandoned the detached and neutral judicial role; (2) the officer was dishonest or reckless in preparing the affidavit; or (3) the warrant was so lacking in probable cause that the officer could not reasonably rely on the judge's issuance of it. *Id.*; *see also Leon*, 468 U.S. at 923.

Reichling does not allege that the issuing judge merely rubber-stamped the warrant applications or that the officer preparing the affidavit was dishonest or reckless. Reichling instead claims that the "warrant applications simply fail to offer any basis for officers to expect to find contraband on any device other than Reichling's cell phone," and the "total lack of information [in the affidavit] to connect the contra-

band to … devices beyond the cell phone cannot convince a reasonably well-trained officer that the warrant is valid." As discussed above, the affidavit included enough detail that a reasonable officer might rely on the judge's issuance of a warrant based upon it. While we do not endorse this affidavit as a model for other officers to follow, this is not one of "those unusual cases in which exclusion will further the purposes of the exclusionary rule." *Leon*, 468 U.S. at 918.

The district court's judgment is AFFIRMED.