# UNITED STATES ARMY COURT OF CRIMINAL APPEALS

Before
BERGER, WOLFE, and ALDYKIEWICZ
Appellate Military Judges

**UNITED STATES, Appellee**
**v.**
**Sergeant First Class MICHAEL D. MILLER[1]**
**United States Army (Retired), Appellant**

ARMY 20180023

Headquarters, US Army Combined Arms Center and Fort Leavenworth
J. Harper Cook, Military Judge
Colonel Craig E. Merutka, Staff Judge Advocate

For Appellant: Captain Steven J. Dray, JA (argued); Lieutenant Colonel Tiffany D. Pond, JA; Major Julie L. Borchers, JA; Captain Steven J. Dray, JA (on brief and brief on specified issue); Colonel Elizabeth G. Marotta, JA; Lieutenant Colonel Tiffany D. Pond, JA; Captain Zachary A. Szilagyi, JA; Captain Steven J. Dray, JA (on reply brief).

For Appellee: Captain Meredith M. Picard, JA (argued); Colonel Steven P. Haight, JA; Lieutenant Colonel Eric K. Stafford, JA; Major Hannah E. Kaufman, JA; Captain Meredith M. Picard, JA (on brief); Colonel Steven P. Haight, JA; Major Hannah E. Kaufman, JA; Captain Meredith M. Picard, JA (on brief on specified issue); Colonel Steven P. Haight, JA; Major Marc B. Sawyer, JA; Captain Meredith M. Picard, JA (on brief on amended specified issue), Captain Jeremy S. Watford, JA.

10 May 2019

----------------------------------
OPINION OF THE COURT
----------------------------------

BERGER, Chief Judge:

In the Fall of 2012, appellant, Michael D. Miller was serving as a contractor on Camp Cole, Tarin Kwot, Afghanistan. Mr. Miller was also retired Sergeant First

---

[1] This case was argued at Yale Law School in New Haven, Connecticut on 29 January 2019 as part of the Army Court of Criminal Appeals' outreach program. Prior to Senior Judge Wolfe leaving the Court, we issued a decision in this case. This opinion follows.

Class [SFC (R)] Miller.[2]  During that time, appellant possessed an encrypted, password-protected external thumb drive, containing thousands of images and videos of adult pornography, child pornography, and child erotica.  Law enforcement discovered the thumb drive during a magistrate-authorized search of appellant's room on Camp Cole.

Appellant was tried and convicted, pursuant to a conditional guilty plea,[3] of one specification of violating a lawful general order (i.e., General Order-1B (GO-1B)) by wrongfully possessing sexually explicit material in Afghanistan and one specification of knowingly and wrongfully possessing child pornography, violations of Articles 92 and 134, Uniform Code of Military Justice, 10 U.S.C. §§ 892 and 934 (2012) [UCMJ].  Appellant was charged and tried as a retiree and not as a person serving with or accompanying the force.[4]

On appeal, appellant challenges the military judge's denial of the motion to suppress the evidence found in his room on Camp Cole, evidence forming the basis for both his Article 92 and Article 134, UCMJ, convictions, an issue preserved by virtue of appellant's conditional plea.

After argument on appellant's preserved issue, this court specified an additional issue regarding the Specification of Charge I, appellant's general order conviction:

---

[2] For ease of reading, SFC (R) Miller will be referred to simply as either appellant or SFC (R) Miller throughout the opinion unless his status as a civilian is relevant, at which point he will be referred to as, "Mr. Miller."

[3] *See* Rule for Courts-Martial [R.C.M.] 910(a)(2).  "With the approval of the military judge and the consent of the Government, an accused may enter a conditional plea of guilty, reserving the right, on further review or appeal, to review of the adverse determination of any specified pretrial motion."  *Id*.

[4] *Compare* Article 2(a)(4), UCMJ, *with* Article 2(a)(10), UCMJ, providing for court-martial jurisdiction over "Retired members of a regular component of the armed forces who are entitled to pay," and "In time of declared war or contingency operation, persons serving with or accompanying an armed force in the field," respectively.  *Compare also United States v. Dinger*, 77 M.J. 447, 453 (C.A.A.F. 2018) ("'Retired members of a regular component of the armed forces who are entitled to pay' are subject to the UCMJ and, therefore, trial by court-martial.") (citations omitted), *with United States v. Ali*, 71 M.J. 256 (C.A.A.F. 2012) (validating the exercise of UCMJ jurisdiction to court-martial personnel serving with or accompanying the force in the field in time of declared war or contingency operation).

WITH REGARD TO THE SPECIFICATION OF CHARGE I,
WHETHER THIS COURT MAY AFFIRM THE FINDING OF GUILTY
WHEN: A) THE SPECIFICATION ASSERTED JURISDICTION OVER
APPELLANT IN HIS STATUS AS A RETIREE; B) HIS GUILTY
PLEA WAS BASED ON HIS OBLIGATION TO OBEY AN ORDER AS
A CONTRACTOR ACCOMPANYING THE FORCE.

The above was specified because a review of appellant's providence inquiry into his general order violation revealed a charged offense premised on appellant's status as a retiree, yet a guilty plea premised on his status as a person accompanying an armed force in the field. As a result, appellant's plea raises questions surrounding the government's assertion of jurisdiction, both personal and subject matter, as well as appellant's providence to the charged offense.

For the reasons explained below, we find that: (1) the military judge did not err in failing to suppress the evidence found in appellant's room on Camp Cole; and (2) appellant's plea to violating a general order was improvident.

On 8 March 2019, action was taken consistent with this opinion, affirming appellant's Article 134, UCMJ, child pornography conviction (the Specification of Charge II), dismissing his Article 92, UCMJ general order conviction (the Specification of Charge I), and affirming his adjudged and approved sentence to confinement for fifteen-months. A copy of that order is attached hereto as an appendix.

## BACKGROUND

On or about 5 October 2012, Army law enforcement agents from the U.S. Army Criminal Investigation Command (CID) received a report from the National Center for Missing and Exploited Children (NCMEC). The report stated that a user, named "Mike Miller," had uploaded eleven suspected files of child pornography to the Microsoft Sky Drive (the Cloud) from 9 September 2012 at 4:53:07 hours to 10 September 2012 at 03:33:08 hours. The NCMEC report linked the internet protocol (IP) address associated with an Army Post Office, Army Europe (APO AE) location and the Sky Drive account with an email address containing appellant's first and last names.

In response to a subpoena, Microsoft confirmed that the email account was operating from an IP address geographically located in the APO AE area and that the user of the email address provided additional subscriber information that included an Army Knowledge Online email address also containing appellant's first and last names. Army CID agents then conducted additional investigation on 25 October 2012, verifying that SFC (R) Michael D. Miller was a contractor residing in D-Block, Room 227, Camp Cole, Tarin Kwot, Afghanistan, APO AE 09380.

In addition to noting the aforementioned information, a CID agent of the Kandahar Afghanistan CID office completed an affidavit that also addressed, *inter alia*: his training and experience; the technical requirements and difficulties frequently associated with searching digital media; relevant terms and their definitions (e.g., computer, download, upload, etc.); and how files are generally transferred via the internet.

On 30 October 2012, the CID agent submitted to the magistrate his affidavit and a search and seizure authorization in support of his request to search appellant's room and "any and all electronic media, digital media, and storage device to include government/privately owned and operated laptop computer(s), desk top computer(s), cellular telephone(s), MP3 digital media, and tablets owned/operated by Mr. Michael D. Miller (SSN: [ ])," for any evidence related to the sexual exploitation of minors.[5]

That same day, the military magistrate authorized the search of two relevant places:[6] (1) appellant's quarters; and (2) all digital or electronic storage devices controlled or owned by appellant. Within those places, the agents were authorized to search for digital files related to the sexual exploitation of minors. The search ultimately resulted in the discovery of the "thumb-drive" at issue.

Prior to trial, appellant moved to suppress the seizure and subsequent search of appellant's electronic devices, to include the thumb-drive. Following a written response by the government, a suppression hearing, and a supplemental motion by appellant, the military judge denied appellant's suppression motion in a twelve-page written ruling. The military judge found that the magistrate had a substantial basis for concluding probable cause existed to search all devices in appellant's living area that were capable of storing or uploading child pornography. Accordingly, the judge held that the magistrate lawfully issued the search authorization and thus denied appellant's motion to suppress.

---

[5] The affidavit allowed for the search of any property described as "text, graphics, videos, electronic mail messages, internet chat room logs and other data including deleted files and folders containing material related to the sexual exploitation of minors; and/or material depicting apparent or purported minors engaged in sexually explicit conduct; and data and/or information used to facilitate access to, possession, distribution, and/or production of such materials."

[6] While the search authorization also extended to appellant's work area, this is not relevant to our decision.

## LAW AND DISCUSSION

*A. Whether the Military Judge Erred in Denying Appellant's Motion to Suppress*

*1. Standard of Review and Legal Principles*

We review a military judge's denial of a suppression motion for an abuse of discretion. *United States v. Eppes*, 77 M.J. 339, 344 (C.A.A.F. 2018) (citations omitted). Reversal is warranted for an abuse of discretion if the military judge's findings of fact are clearly erroneous or if the judge's decision is influenced by an erroneous view of the law. *United States v. Owens*, 51 M.J. 204, 209 (C.A.A.F. 1999) (citation omitted). We consider the evidence in the light most favorable to the prevailing party, here the government. *United States v. Macomber*, 67 M.J. 214, 219 (C.A.A.F. 2009) (citation omitted).

Probable cause to search exists when there "is a reasonable belief that the person, property, or evidence sought is located in the place or on the person to be searched." Mil. R. Evid. 315(f)(2). In other words, probable cause requires a sufficient nexus between the alleged crime and the item to be seized. *United States v. Nieto*, 76 M.J. 101, 106 (C.A.A.F. 2017) (citing *United States v. Rogers*, 67 M.J. 162, 166 (C.A.A.F. 2009)); *United States v. Gallo*, 55 M.J. 418, 421 (C.A.A.F. 2001). "A nexus may be inferred from the facts and circumstances of a particular case, including the type of crime, the nature of the items sought, and reasonable inferences about where evidence is likely to be kept." *Id.* (internal quotation marks and citations omitted).

Probable cause does not demand a specific probability, nor must the evidence lead one to believe that it is more probable than not that contraband will be present. *Eppes*, 77 M.J. at 345 (quoting *United States v. Leedy*, 65 M.J. 208, 213 (C.A.A.F. 2007)). Instead, probable cause is a flexible, common sense standard based on the factual and practical considerations of everyday life on which reasonable persons act. *Id.*

When reviewing a military magistrate's probable cause determination, we "look at the information made known to the [military magistrate] at the time of his decision." *United States v. Carter*, 54 M.J. 414, 418 (C.A.A.F. 2001) (citation omitted). We "do not review the military magistrate's probable cause determination de novo," rather we examine whether the "magistrate had a substantial basis for concluding that probable cause existed." *Nieto*, 76 M.J. at 105 (quoting *United States v. Hoffmann*, 75 M.J. 120, 125 (C.A.A.F. 2016); *Rogers*, 67 M.J. at 164-65).

"A magistrate has a substantial basis to issue a [search authorization] when, based on the totality of the circumstances, a common-sense judgment would lead to the conclusion that there is a fair probability that evidence of a crime will be found

at the identified location." *Rogers*, 67 M.J. at 165 (citing *Illinois v. Gates*, 462 U.S. 213, 238 (1983); *Leedy*, 65 M.J. at 213)).

In determining whether the magistrate had a substantial basis, "we examine the facts known to the magistrate at the time of his decision, and . . . we analyze the manner in which the facts became known to the magistrate." *Leedy*, 65 M.J. at 214. Our review is not limited to those inferences the magistrate actually made, but encompasses those the issuing magistrate "could have made." *Eppes*, 77 M.J. at 345. Further, we review affidavits in a commonsense manner, not a hypertechnical one. *Id.* (citations omitted). This review is naturally guided by the deference afforded searches authorized by a neutral and detached magistrate.[7]

### 2. *Analysis of Probable Cause Determination*

We quickly conclude that there was probable cause to believe a crime had been committed when images of child pornography were uploaded onto the Microsoft Sky Drive.

Second, we conclude there was probable cause to believe appellant was the person who uploaded the images. The person who uploaded the images established an account with the user name "Michael Miller," a Microsoft email address that included the name Michael Miller, and an army email address that contained appellant's first, middle, and last name that law enforcement determined was officially associated with appellant. And, finally, the IP address that uploaded the child pornography was in the more specific location where CID would find appellant - APO AE.

Third, we conclude that there was probable cause to believe appellant possessed a digital image of child pornography. The magistrate could reasonably infer appellant owned devices capable of storing child pornography because one cannot generally upload an image unless the person has possession or control over the image. In fact, the suspect files could not have been uploaded to the Sky Drive account without such a device.

Given the facts in this case, and considering the nature of the contraband at issue, as well as the possible locations where a person would secret a device full of contraband, it is reasonable and logical to conclude appellant secured the contraband either in his living quarters or on his person.

---

[7] *See Gates*, 462 U.S. at 236 ("A grudging or negative attitude by reviewing courts towards warrants is inconsistent with the Fourth Amendment's strong preference for searches conducted pursuant to a warrant . . . .") (internal quotation marks and citation omitted); *see also Eppes*, 77 M.J. at 345.

In this case, appellant, working as a government contractor, had quarters located in Afghanistan, a deployed environment. Thus, the world of locations where he could hide devices that stored digital images of child pornography – let alone access the internet to upload the images – was limited. We find these facts, coupled with the linkage of the account and IP address to appellant, and in light of reasonable inferences about uploading and storing files and the behavior of those possessing child pornography, creates a sufficient nexus between the alleged crime and the items sought in appellant's quarters.

Appellant argues that our superior court's decision in *United States v. Nieto*, 76 M.J. 101 (C.A.A.F. 2017), should drive us toward the opposite conclusion. To our eye, appellant misreads *Nieto*.

In *Nieto*, the accused used a phone to take illicit photographs of others in the latrine. 76 M.J. at 103. The CID agent investigating the case sought a search authorization to search Nieto's bunk and seize his cell phone and laptop. *Id.* There was no evidence linking the cell phone to Nieto's laptop, no evidence regarding the phone's capability to transfer digital images, and no evidence that Nieto had ever transferred any files from his phone to his computer. *Id.* at 107-08. That Nieto even owned the computer at issue was questionable, as it was predicated on suspect information and credited to an unknown source. *Id.* at 108. Although the CID agent in *Nieto* provided "generalized profile" information regarding what people do with information gathered using a portable digital media recorder, like a phone, he failed to link Nieto to that profile or establish Nieto engaged in the conduct addressed by the profile. *Id.* at 107-08.

While law enforcement in *Nieto* had probable cause to search and seize a phone that had been used to take illicit photographs of persons in the bathroom, only bare bones "profile" evidence suggested that there would be evidence of that crime on other devices. *Id.* Here, there was probable cause to believe appellant possessed or controlled a device that had been used to upload child pornography to the Cloud. Law enforcement was not looking for evidence of a crime based on profile evidence; they were looking for the instrumentality of the crime itself.[8] We read *Nieto* as supporting the search authorization in this case.

Just as sending a fax requires that the sender possess the original document, uploading a digital image to the Cloud requires that the accused have possession or control over the digital image being uploaded and a device capable of conducting the

---

[8] Assume, for example, that there was probable cause to believe that appellant had shot someone with a firearm of some type while in Afghanistan. A search of appellant's quarters for "all firearms and ammunition" would not be a search based on profile evidence, it would be a search for the weapon used to commit the crime.

upload. There was probable cause that appellant possessed or controlled a device containing child pornography.

But the closer question in appellant's case is not whether there was probable cause to believe appellant possessed or controlled images of child pornography. The issue is whether there was a sufficient basis to search for evidence of the crime or the images that appellant controlled or possessed in appellant's living quarters.

"Simple common sense supports the inference that one likely place to find evidence of a crime is the suspect's home, at least absent any evidence to the contrary." *United States v. Aljabari*, 626 F.3d 940, 945 (7th Cir. 2010); *see also United States v. Jones*, 994 F.2d 1051, 1055-56 (3d Cir. 1993) ("If there is probable cause to believe that someone committed a crime, then the likelihood that that person's residence contains evidence of the crime increases); *United States v. Feliz*, 182 F.3d 82, 88 (1st Cir. 1999). Of course this is not to suggest that as a general rule evidence of a crime is likely to be found in a suspect's home. It merely guides our analysis of what may be reasonable in light of the evidence and the offense. We are mindful of our superior court's cautionary note in *Eppes*, warning that other incriminating facts are likely required to make such an inference. 77 M.J. at 352 n.5 ("[w]ithout some other incriminating facts, a search authority cannot reasonably infer that the average servicemember is more likely to store evidence of criminality on his home computer than on his work computer.").

The aforementioned inference, however, becomes of greater validity when considering child pornography. As the Court of Appeals for the Fourth Circuit noted in *United States v. Richardson*, "collectors and distributors of child pornography value their sexually explicit materials highly, 'rarely if ever' dispose of such material, and store it 'for long periods' in a secure place, typically in their homes." 607 F.3d 357, 370 (4th Cir. 2010) (citation omitted); *accord United States v. Raymonda*, 780 F.3d 105, 114 (2d Cir. 2015) (" . . . it is well known that images of child pornography are likely to be hoarded by persons interested in those materials in the privacy of their homes . . . .") (quoting *United States v. Irving*, 452 F.3d 110, 125 (2d Cir. 2006)).

Although the affidavit here did not include this type of general profile information about those who possess child pornography, judges may consider common knowledge. As the Court of Appeals for the Seventh Circuit noted, "the law does not require judges to pretend they are babes in the woods. In evaluating search warrant applications, judges may consider what 'is or should be common knowledge.'" *United States v. Reichling*, 781 F.3d 883, 887 (7th Cir. 2015) (citation omitted). The Seventh Circuit affirmed the district court's denial of a suppression motion in *Reichling*, where the appellant used a cell phone to send a minor threatening and harassing text messages as well as receive naked images of the

minor. *Id.* at 886. The warrant in that case authorized the search of appellant's parents' residence and adjacent property.[9] *Id.* at 885.

Similar to this case, the affidavits supporting the warrants in *Reichling* could have contained additional profile or general digital background information. For example, the affidavits could have included an explanation that "images sent via cell phones or Facebook accounts may be readily transferred to other storage devices, such as those identified in the warrants" or that collectors of child pornography tend to maintain their "stash over long periods of time." *Id.* at 887 (citations omitted). Yet the absence of this information did not invalidate the warrant or subsequent search. As the court noted, "[i]t may have been prudent for the agent preparing the search warrant affidavit to have included [these] fact[s] in the affidavit itself, in case his application ended up on the desk of a Luddite jurist, but we do not think it was required." *Id.* (citing *United States v. Newsom*, 402 F.3d 780, 783 (7th Cir. 2005) (failure of affidavit to state that collectors of child pornography maintain their pornography over long periods of time does not invalidate the affidavit or search)). The same logic applies here.

Persons who view and possess child pornography are often subject to public opprobrium, scorn, and criminal sanction. Child pornography is obscene contraband that perpetrators are likely to try to hide. However, that collectors of child pornography maintain their stash in their residence and often for long periods of time should not be construed as blanket authorization, in every case, to search a suspect's residence. Rather, it informs what is reasonable to infer, and what has become common knowledge, when dealing with persons suspected of the possession of child pornography. Whether an authorization issues in any case is to be decided on a case-by-case basis and nothing herein changes that.

In this case, the fact that the affidavit stated appellant uploaded child pornography to his Cloud storage raises a reasonable inference that appellant used a computer or other digital device as an instrumentality to pursue the crime of possession of child pornography. We then find it to be a reasonable inference that evidence of the criminal conduct probably resides on such devices. Due to the nature of the images and that appellant uploaded the images from an IP address

---

[9] The warrants in question in *Reichling* authorized the search of appellant's parents' residence as well as an adjacent trailer, "authorizing the seizure of the following: '[i]mages, photographs, videotapes or other recordings or visual depictions representing the possible exploitation, sexual assault and/or enticement of children; '[a]ll computers and computer hardware devices,' including desktops, laptops, cell phones, and any type of camera; and '[i]nternal and peripheral digital/electronic storage devices,' including 'hard drives,' 'thumb or flash drives,' and 'video tapes.'" 781 F.3d at 885-86.

reflecting an APO AE location where appellant was located – in the deployed austere environment of Afghanistan – there is probable cause to conclude that the device would be found in appellant's living quarters.

Having limited our review to those facts before the military magistrate (i.e., the affidavit) and drawing all reasonable inferences therefrom, we find that the magistrate had a substantial basis to conclude that probable cause existed to search appellant's room in Afghanistan.[10] Accordingly, the military judge did not err in denying appellant's suppression motion.

---

[10] Assuming arguendo that the search authorization lacked probable cause, the good-faith exception to the exclusionary rule, embodied under Military Rule of Evidence (Mil. R. Evid.) 311(c)(3), would authorize the admission of the fruits of the search of appellant's living quarters. For the reasons previously noted in this opinion, we find that a reasonable law enforcement official would objectively believe that the evidence put forth established probable cause. *See United States v. Perkins*, __ M.J. ___, 2019 CAAF LEXIS 290, at *14-16 (C.A.A.F. 23 Apr. 2019). Law enforcement did exactly what the Fourth Amendment demands – obtain a search authorization from a neutral and detached magistrate. In addition, none of the four circumstances that would negate application of the good faith exception (i.e., a false or reckless affidavit in support of the authorization; review by a magistrate who "wholly abandoned his judicial role" or was a rubber stamp; a facially deficient affidavit; or, a facially deficient authorization) are present in appellant's case. *See United States v. Leon*, 468 U.S. 897, 923 (1984); *see also United States v. Carter*, 54 M.J. 414, 419-20 (C.A.A.F. 2001); *Perkins*, 2019 CAAF LEXIS 290, at *18-20.

Consequently, the exclusion of the evidence at issue would result in no appreciable deterrence of future unlawful searches and seizures. *See Leon*, 468 U.S. at 918-19 (recognizing that the exclusionary rule "cannot be expected, and should not be applied, to deter objectively reasonable law enforcement activity")*; Massachusetts v. Sheppard*, 468 U.S. 981 (1984). Further, any benefit, of which we think there are none in the appellant's case, does not outweigh the costs to the justice system, which is required for exclusion to be appropriate. *See Davis v. United States*, 564 U.S. 229, 237 (2011) (citations omitted). Suppression in appellant's case demands a heavy price with scant effect on deterrence.

An analysis under Mil. R. Evid. 311(a)(3) would arrive at the same conclusion. *See* Mil. R. Evid. 311(a)(3) (requiring the exclusion of evidence to result in an appreciable deterrence of future unlawful searches or seizures and the benefits of such deterrence to outweigh the costs to the justice system). As such, even if the military magistrate's search authorization lacked probable cause, the fruits of the search of appellant's living quarters were admissible under the good faith exception to the exclusionary rule.

### B.  *Whether Appellant's Plea to Violating a General Order was Provident*

Rule for Courts-Martial 202(a) states, "[c]ourts-martial may try any person when authorized to do so under the code."  The classes of persons subject to the code are listed in Article 2, UCMJ.  *See also* R.C.M. 202(a) discussion.

When appellant was in Afghanistan, he was subject to the Code under two different theories of personal jurisdiction:  as a military retiree entitled to pay under Article 2(a)(4), UCMJ, and as a contractor accompanying an armed force in the field as part of a contingency operation under Article 2(a)(10), UCMJ.

"Post-Solorio [*Solorio v. United States*, 483 U.S. 435 (1987)], the status of the individual is the focus for determining both jurisdiction over the offense and jurisdiction over the person."  *United States v. Ali*, 71 M.J. 256, 264 (C.A.A.F. 2012) (citation omitted).  As a general rule, a specification is not required to state the authority for personal jurisdiction over the accused when the accused is on active duty.  *See* R.C.M. 307(c)(3) discussion ("Ordinarily, no allegation of the accused's armed forces or unit or organization is necessary for military members on active duty.").  However, in all other cases, "the specification should describe the accused's . . . status which will indicate the basis for jurisdiction."  *Id.*

In drafting the Specification of Charge I, the government asserted personal jurisdiction over appellant (i.e., that he was subject to the code) only as a military retiree.  The specification did not mention appellant's status as a civilian (i.e., contractor) accompanying an armed force in the field during a contingency operation.  That the government asserted jurisdiction *only* under the first theory, as a retiree, is echoed by the military judge.  During appellant's arraignment, on 30 October 2017, when discussing how to address appellant, the military judge noted:

> I think that the nature of the jurisdiction for this hearing, frankly, is that Sergeant First Class (Retired) Miller is a retiree recall [sic] for these proceedings and that it would be more proper to refer to you, sir, as Sergeant First Class (Retired) Miller rather than Mr. Miller, so I'm going to either refer you to [sic] Sergeant First Class (Retired) Miller or I may just drop the "Retired" part because, again, it is a mouthful.  I think it's very clear, the status which the government alleges, that they have jurisdiction over you for, so that's the court's decision in that regard.

At the time of trial, on 18 January 2018, the military judge again reinforced that appellant was being tried in his status as a retiree, as noted by the following colloquy between the military judge (MJ) and appellant (i.e., the accused, ACC):

11

> MJ: Do you understand – and I'm sure you well understand, but I want to hear your view on this that the reason why the court-martial has jurisdiction over you is due to your retired status and that your retired status that you were entitled to pay? Do you understand that's the jurisdictional hook that brings you into this court-martial today?
>
> ACC: Yes, sir.
>
> MJ: Okay. Do you have any reason to challenge that jurisdictional hook that you were a retiree, a regular-- excuse me, a retired member of a regular component of the armed forces being entitled to pay?
>
> ACC: No, sir.

However, when pleading guilty to violating a general order, appellant stated he had a duty to obey the order as a contractor who was accompanying an armed force in the field. Although the colloquy between the military judge and the accused adequately established that appellant knowingly pleaded guilty to violating an order which, as a contractor accompanying an armed force,[11] he had a duty to obey, there was no discussion regarding whether Article 92, UCMJ, imposed any duty of obedience on him as a retiree.

The relationship or interplay between the jurisdiction alleged in the pleadings (i.e., personal jurisdiction as a military retiree), the jurisdiction asserted during the

---

[11] This is only the second case we could find under the UCMJ in which a person was convicted at court-martial for conduct committed as a person accompanying an armed force during a contingency operation. *See generally United States v. Ali*, 71

M.J. 256 (C.A.A.F. 2012). In *Ali*, Mr. Ali, a foreign national working as a civilian contractor in Iraq, was tried and convicted at a general court-martial, pursuant to his pleas, of false official statement, wrongful appropriation, and wrongfully endeavoring to impede an investigation. *Id.* at 258. Prior to his plea, Ali challenged the court's asserted jurisdiction over him as a "person serving with or accompanying an armed force in the field" during a "contingency operation." *Id.* at 258-59; *see also* Article 2(a)(10), UCMJ. Following The Judge Advocate General's Article 69(d), UCMJ, certification of Ali's case to this court, the assertion of jurisdiction and Ali's conviction were affirmed, 70 M.J. 514 (Army Ct. Crim. App. 2011), a decision reviewed and affirmed by the Court of Appeal for the Armed Forces, 71 M.J. 256 (C.A.A.F. 2012).

plea colloquy (i.e., personal jurisdiction as a civilian accompanying the force), and the applicability of Article 92, UCMJ, to appellant as a retiree, civilian accompanying the force, or both (i.e., subject matter jurisdiction) leaves us with some concerns.

First, was the accused properly placed on notice by the specification that his duty to obey a general order in Afghanistan derived from his status as a person accompanying an armed force in the field, and not as a retiree as stated in the specification?

Second, while the general order states it applies to all "military personnel" it does not state that it applies to *all* retirees in Afghanistan. Would the general order apply to a military retiree serving with the State Department, the International Committee of the Red Cross, or a retiree working for the host government? To answer this question requires, in part, determining which orders a person in retired status has a duty to obey.[12]

Third, although GO-1B purports to apply to persons accompanying the force, it is unclear whether the sanction for violation, in appellant's case, was punishable under the UCMJ or in a non-criminal setting (i.e., termination of employment).

Lastly, and more importantly, if the government's theory of jurisdiction for the offense relied on appellant's status as a person accompanying the force, Army Regulation 27-10, Chapter 27, withholds convening authority to "commanders of geographic combatant commands, and those commanders assigned or attached to the combatant command who possess the authority to convene a general court-martial." Army Reg. 27-10, Legal Services: Military Justice, para. 27-3c (11 May 2016) [AR 27-10]. Thus, while the commander of Fort Leavenworth was authorized to convene and refer charges against a retiree to a general court-martial, the Secretary of the Army has withheld the ability to convene courts-martial when the theory of personal jurisdiction is found in Article 2(a)(10), UCMJ.[13] In other words, this court-martial

---

[12] We have found one case on point, but it is neither controlling nor persuasive authority. *See United States v. Allen*, 31 M.J. 572, 636 (N.C.M.R. 1990). In any event, even were we to assume that a military retiree may have some duty to obey certain general orders, in a case where this complex issue was not discussed during appellant's guilty plea, we would find the plea was not made knowingly.

[13] As best we can tell, these issues are both novel and complex. It is possible that defense counsel at trial may have advised appellant on these issues, and that the accused knowingly decided to nonetheless obtain the benefits of pleading guilty. However, in our experience, it is more likely that even competent counsel may have

(continued . . .)

may have lacked the authority to refer charges against appellant for offenses committed while serving as a contractor accompanying the force. *See id.*; *see also* R.C.M. 202(a) discussion (directing service regulations be carefully examined before initiating court-martial proceedings against civilians and noting that jurisdiction under Article 2(a)(10) may be exercised "under some circumstances").

In a contested case, we might find ourselves forced to reason our way out of this thicket. In a guilty plea, however, it is enough for us to determine whether appellant's plea was knowing and voluntarily made.

We review a military judge's decision to accept a guilty plea for an abuse of discretion. *United States v. Eberle*, 44 M.J. 374, 375 (C.A.A.F. 1996). "During a guilty plea inquiry the military judge is charged with determining whether there is an adequate basis in law and fact to support the plea before accepting it." *United States v. Inabinette*, 66 M.J. 320, 321-22 (C.A.A.F. 2008) (citing *United States v. Prater*, 32 M.J 433, 436 (C.M.A. 1991)). Thus, "the test for an abuse of discretion in accepting a guilty plea is whether the record shows a substantial basis in law or fact for questioning the plea." *United States v. Moon*, 73 M.J. 382, 386 (C.A.A.F. 2014) (citing *United States v. Passut*, 73 M.J. 27, 29 (C.A.A.F. 2014)).

Before accepting a plea of guilty, the military judge must "inform the accused of, and determine that the accused understands . . . the nature of the offense to which the plea is offered . . . ." R.C.M. 910(c)(1). An accused has a right to know to what offense and under what legal theory he or she is pleading guilty. *United States v. Medina*, 66 M.J. 21, 26 (C.A.A.F. 2008). "The providence of a plea is based not only on the accused's understanding and recitation of the factual history of the crime, but also on an understanding of how the law relates to those facts." *Id.* (citation omitted).

Here, a review of the record reveals that the parties were confused by the dual status of appellant as a military retiree and civilian accompanying the force. The military judge noted:

---

(. . . continued)
failed to spot the interplay between Article 2, Article 92, Department of Defense Instruction 5525.11, and Army Regulation 27-10, Ch. 27. Under Article 66(c), UCMJ we have the authority to "notice" issues that were waived or forfeited at the trial level. Given the complexity and military unique nature of this issue, to the extent that appellant's unconditional guilty plea to the Specification of Charge I waived or forfeited these issues, we have exercised our authority under Article 66(c) and will treat them as preserved. *See United States v. Conley*, 78 M.J. 747, 752 (Army Ct. Crim. App. 2019) (addressing a service court's authority to "notice" both forfeited and waived issues).

> I think the government's theory and your understanding, is
> that the authority of GO 1 Bravo was for you being a
> civilian contractor accompanying the force, but might it
> also be that since you are subject to the UCMJ you may be
> punished thereunder? Might that also be a separate theory
> as a military retiree?

In response, appellant responded in the affirmative. The remainder of the plea colloquy on this offense focused on appellant's status as a contractor, not as a retiree. As for the alternate theories of liability and their impact on appellant's plea, the military judge noted, "I don't need to really resolve that." We disagree.

The military judge twice told appellant that personal jurisdiction existed because of his status as a retiree. The colloquy that followed, however, focused on appellant's status as a civilian contractor accompanying the force and his obligation as a civilian contractor accompanying the force to obey GO-1B. After specifying the issue and having the benefit of appellant's and appellee's written pleadings, we are not convinced that appellant, counsel, or the military judge fully understood the legal theory supporting appellant's plea or how the law related to the facts he provided during his plea colloquy. Because it was never substantively discussed, it is not clear that anyone considered whether jurisdiction over appellant as a contractor had been withheld.

That appellant violated the plain language of the general order (i.e., GO-1B) by wrongfully possessing pornographic and sexually explicit material is without dispute. The facts are crystal clear; the law and its relation to the facts are murky at best and the record before us does not convince us that the parties understood the novel and complex issues before them. More importantly, we are not convinced appellant understood the legal underpinnings of his guilt when charged as a retiree and convicted as a person accompanying the force at a court convened by an officer who may have lacked the authority to try a civilian in his status as a contractor.

To be clear, we need not decide whether the basis for personal jurisdiction must necessarily match the duty to obey GO-1B. But, when the providence inquiry raises substantial questions about an accused's understanding of the basis for personal jurisdiction or source of duty to obey then the plea is improvident.

Therefore, consistent with our 8 March 2019 order, we SET ASIDE and DISMISS appellant's conviction for the Specification of Charge I and Charge I.

*C. Sentence Reassessment*

Applying the principles of *United States v. Sales*, 22 M.J. 305, 308 (C.M.A. 1986) and the factors set forth in *United States v. Winckelmann*, 73 M.J. 11, 15-16 (C.A.A.F. 2013), we conclude that we can confidently reassess appellant's sentence without returning this case for a sentence rehearing.

Although appellant's maximum exposure is reduced from twelve to ten years, we find the two-year reduction does not constitute a dramatic change in the penalty landscape. Appellant chose sentencing by a military judge, not a panel, and retains the benefit of his negotiated plea agreement – disapproval of any adjudged punitive discharge and no action by the government to administratively discharge or separate appellant for any of the misconduct alleged in or related to the charges and specifications. In other words, appellant bargained for and preserved his military retirement. The gravamen of appellant's misconduct is unchanged – the possession of child pornography, a crime centered on the sexual exploitation of children, the most vulnerable members of society. Finally, appellant's remaining conviction is one that members of this court have experience and familiarity with such that we can reliably determine what sentence would have been imposed at trial.

Based on the entire record we conclude the military judge would have imposed a sentence of at least that which was approved.

**CONCLUSION**

For the reasons noted above and upon consideration of the entire record, we hold: the military judge did not err in failing to suppress the evidence of child pornography seized from appellant's room in Afghanistan and appellant's plea as to the Specification of Charge I, a violation of Article 92, UCMJ, is improvident.

Accordingly, consistent with our 8 March 2019 decision, we: SET ASIDE and DISMISS appellant's conviction for the Specification of Charge I and Charge I; AFFIRM appellant's conviction for the Specification of Charge II and Charge II; and AFFIRM appellant's sentence after having properly reassessed his sentence on the basis of the error noted, the entire record, and in accordance with the principles of *United States v. Sales*, 22 M.J. 305, 308 (C.M.A. 1986) and *United States v. Winckelmann*, 73 M.J. 11, 15-16 (C.A.A.F. 2013). All rights, privileges, and property, of which appellant has been deprived by virtue of that portion of the findings set aside by this decision are ordered restored.

Senior Judge WOLFE concurs.

ALDYKIEWICZ, Judge, concurring:

I concur with the opinion in its entirety.

I write simply to highlight two points made in the leading opinion about inferences any magistrate today *may* draw once a subject is connected to the possession of child pornography. Specifically, those engaged in the possession of child pornography are: (1) likely to maintain their illegal contraband for long periods of time; and, (2) likely to secure the contraband in a private place, which is likely the subject's residence. These two inferences are so commonly understood today that they have garnered boilerplate status in affidavits submitted by "experienced" investigators in support of a search authorization request.[14] Consequently, an affidavit does not require a statement of these two inferences to make a search warrant valid. Both of these inferences should be common knowledge. *See, e.g., United States v. Seiver*, 692 F.3d 774, 777-78 (7th Cir. 2012) (While some magistrates may know little about computers, an affidavit in support of a computer search warrant need not explain that deleted files are recoverable because "it is or should be common knowledge."); *United States v. Notman*, 831 F.3d 1084, 1088 (8th Cir. 2016) (recognizing the "well-established hoarding habits of child pornography collectors").

Regardless of the suspected crime, we begin our probable cause analysis with a review of whether the magistrate had "a substantial basis to issue a warrant when, based on the totality of the circumstances, a common-sense judgment would lead to

---

[14] *See, e.g., United States v. Gallo*, 55 M.J. 418, 420 (C.A.A.F. 2001) (affidavit in support of search authorization noted, in part: pedophiles are "persons who have a sexual attraction to children;" "[p]edophiles rarely, if ever, dispose of their sexually explicit materials;" and "pedophiles almost always maintain and possess their materials [ ] in a place considered secure, frequently within the privacy and security of their own homes"); *United States v. Vosburgh*, 602 F.3d 512, 518 (3d Cir. 2010) (affidavit in support of search warrant noting, "'[c]hild pornography collectors almost always maintain and possess their material in the privacy and security of their homes, or some other secure location such as their vehicle(s), where it is readily available,' and they 'rarely, if ever, dispos[e] of the collection'"); *United States v. Clark*, 668 F.3d 934, 937-38 (7th Cir. 2012) (affidavit in support of search warrant noted, in part: "individuals associated with child pornography . . . [a]lmost always possess and maintain their material . . . in the privacy and security of their homes or some other secure location," and they typically retain their contraband "for many years"); *United States v. Hagwer*, 710 F.3d 830, 833 (8th Cir. 2013) ("'[T]hose who may be collecting sexually suggestive material involving children [ ] often possess and maintain any hard copies of such material in the privacy and security of their homes.'").

the conclusion that there is a fair probability that evidence of a crime will be found at the identified location." *United States v. Rogers*, 67 M.J. 162, 165 (C.A.A.F. 2009) (citations omitted). The magistrate should consider "the type of crime, the nature of the items sought, the suspect's opportunity for concealment and normal inferences about where a criminal might hide [contraband]." *United States v. Jones*, 994 F.2d 1051, 1056 (3d Cir. 1993) (citation omitted).

The circumstances surrounding crimes involving suspected child pornography allow for a common-sense judgment that, "collectors and distributors of child pornography value their sexually explicit materials highly, rarely if ever dispose of such material, and store it for long periods in a secure place, typically in their homes." *United States v. Richardson*, 607 F.3d 357, 370 (4th Cir. 2010) (citation and internal quotation marks omitted); *see also United States v. Raymonda*, 780 F.3d 105, 114 (2d Cir. 2015) ("[I]t is well known that images of child pornography are likely to be hoarded by persons interested in those materials in the privacy of their homes.") (citation omitted); *United States v. Hopkins*, ARMY 20140913, 2018 CCA LEXIS 254, at *17 (Army Ct. Crim. App. 25 May 2018) (mem. op.) (affidavit in support of search authorization noted, in part, "'[b]ased on [the agent's] training and experience as a CID Special Agent, suspects treat their child pornographic media as prized possessions and rarely delete or destroy the media.'").

In appellant's case, the circumstances presented to the magistrate demonstrated appellant uploaded child pornography to his Cloud account from Afghanistan where he was employed as a contractor. At issue is whether there was a substantial basis to search for the images in appellant's quarters, images he logically possessed to effectuate his upload.

That those interested in child pornography are likely to maintain the illegal images in their home is not a novel concept. As early as 1996, the United States District Court for the Northern District of New York noted:

> The observation that images of child pornography are likely to be hoarded by persons interested in those materials in the privacy of their homes is supported by common sense and the cases. Since the materials are illegal to distribute and possess, initial collection is difficult. Having succeeded in obtaining images, collectors are unlikely to quickly destroy them. Because of their illegality and the imprimatur of severe social stigma such images carry, collectors will want to secret them in secure places, like a private residence. This proposition is not novel in either state or federal court: pedophiles, preferential child molestors, and child

> pornography collectors maintain their materials for
> significant periods of time.

*United States v. Lamb*, 945 F. Supp. 441, 460 (1996) (citing cases) (citations omitted).  The court went on to note:

> Of course, before the presumption that pedophiles,
> preferential child molestors, or child pornography
> collectors hoard their materials for extended periods can
> be applied, the judicial officer scrutinizing the warrant
> application must have sufficient information from which it
> can be concluded that the target falls within these
> categories.

*Id.*

Once it is established that an individual possesses child pornography, where else, beyond his residence, would he keep the contraband?  Our superior court recognized this common-sense inference in *United States v. Gallo*, where it found that the magistrate could have found probable cause to search an airman's personal residence after authorities found child pornography on his work computer, the same work computer used to advertise for and solicit child pornography.  55 M.J. 418, 422 (C.A.A.F. 2001).  In arriving at its decision, our superior court noted, "it is reasonably probable that appellant would keep and work on [the child pornography] in a place over which he had substantial control.  Additionally, it is reasonable to infer that the additional materials would be secreted in a place other than his office." *Id.*  (citations omitted).

Finally, appellant's reliance on *United States v. Nieto*, 76 M.J. 101 (C.A.A.F. 2017), to argue the absence of a sufficient nexus between the child pornography appellant uploaded to the Cloud and his residence fails.  For the reasons noted in the majority opinion, the government clearly established the requisite connection between the uploaded child pornography, appellant, and the place to be searched, that is, his residence.  Further, and perhaps more importantly, *Nieto*, a non-child pornography case, does nothing to limit or undermine the inferences a magistrate *may* draw regarding where evidence of child pornography may be found.

As the United States Court of Appeals for the Seventh Circuit noted, "the law does not require judges to pretend they are babes in the woods. . . . [They] may consider what is or should be common knowledge." *United States v. Reichling*, 781 F.3d 883, 887 (7th Cir. 2015) (citation and internal quotation marks omitted).

At the time appellant possessed child pornography, October 2012, it was common knowledge that those who possessed child pornography likely kept their

19

contraband for a long time and in a secure place. The information gathered by CID placed appellant in the category of persons who keep "their materials for extended periods" "in secure places, like a private residence." *Lamb*, 945 F. Supp. at 460. Appellant was on a forward deployed base camp in Afghanistan. I cannot imagine a more secure place for appellant to maintain his child pornography than his room.

FOR THE COURT:

MALCOLM H. SQUIRES, JR.
Clerk of Court